STATE OF CONNECTICUT *v.* JOSEPH MOONEY
(AC 20636)

Foti, Schaller and Hennessy, Js.

Argued November 29, 2000—officially released February 13, 2001

*Richard E. Condon, Jr.,* special deputy assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom were *Jonathan C. Benedict,* state's attorney, and *Gerard P. Eisenman,* assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Joseph Mooney, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c,[1] robbery in the first degree in violation of General Statutes § 53a-134 (a) (1),[2] burglary in the first degree in violation of General Statutes § 53a-101 (a) (2),[3] assault in the first degree of a person sixty years of age or older in violation of General Statutes § 53a-59a (a)[4] and kidnapping in the first degree in violation of General

[1] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, [or] kidnapping . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime . . . ."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[3] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

[4] General Statutes § 53a-59a (a) provides: "A person is guilty of assault of a victim sixty or older in the first degree, when he commits assault in the first degree under section 53a-59 (a) (2), 53a-59 (a) (3) or 53a-59 (a) (5) and the victim of such assault has attained at least sixty years of age or is blind or physically disabled, as defined in section 1-1f."

General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

Statutes § 53a-92 (a) (2) (B).[5] The trial court incorporated the robbery and the burglary charges into the count of felony murder and sentenced the defendant to a term of sixty years imprisonment. On appeal, the defendant claims that the court improperly (1) accepted the verdict of guilty of assault in the first degree and robbery in the first degree because the former was predicated on a finding of reckless use of force while the later was predicated on intentional use of force, and, thus, the verdict was legally inconsistent in violation of his right to due process of law under the constitutions of Connecticut and the United States, (2) instructed the jury on burglary with the intent to commit assault as the predicate felony because the court instructed the jury only as to reckless assault and not as to burglary with the intent to commit assault and (3) denied him his right to a fair trial because two members of the jury allegedly observed the defendant wearing shackles during the course of the trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 28, 1997, the defendant and his accomplice, Irving Hemingway,[6] had been drinking heavily in the course of an alcoholic binge that had started the previous day. When their supply of money and alcoholic beverages was depleted, they decided to rob Edward Sarnick, whom they knew kept alcohol and money in his apartment.[7] Sarnick resided with his housemate, William Burks, in a two bedroom apartment located at 2352 Barnum Avenue, Stratford. Sarnick's bedroom was

---

[5] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with the intent to . . . (B) accomplish or advance the commission of a felony . . . ."

[6] Hemingway pleaded guilty to felony murder and received a sentence of thirty years imprisonment.

[7] Hemingway and the defendant referred to Sarnick as the "bootlegger" because he allegedly sold alcohol illegally.

located at the rear of the apartment near a sealed back door, and Burks' bedroom was located in the front of the apartment near the apartment's main entrance.

On that same day, at approximately 5 a.m., Burks heard someone pounding on the back door of the apartment. He then heard the door crash open and someone yell, "Give it up!" Burks then heard Sarnick yell out for him to call the police. The defendant and Hemingway held Sarnick down with a pillow over his face. They told Sarnick that they would not hurt him if he told them where he kept the money. When Sarnick would not speak, they punched him repeatedly. The defendant and Hemingway then ransacked Sarnick's apartment in search of money that they knew that Sarnick kept there from the proceeds of his sales of alcohol and other items. Frightened by these events and dressed only in his underwear, Burks ran out the front door of the apartment. He went to a local newsstand where he unsuccessfully tried to contact the police. After a few minutes, he left the newsstand and went to a pay telephone outside a McDonald's restaurant, where he was finally able to contact the police. When the defendant and Hemingway were unable to find any money, they took some beer and liquor from Sarnick's apartment and fled. Sarnick died from the blunt trauma that he sustained during the attack.

Officer Donna Brennan of the Stratford police department was the first officer to arrive on the scene. She saw Burks standing in the road, dressed only in his underwear, waving his arms and pointing in the direction of two individuals walking on the sidewalk toward the city of Bridgeport. Upon observing the two suspects, Brennan notified headquarters and broadcast a description of the suspects to other police cruisers that were responding to the call. As she approached the suspects, the defendant started to flee, and a foot chase ensued. Brennan found the defendant hiding behind a fifty-five

gallon drum located in back of a building. Additional facts will be provided as needed.

## I

The defendant first claims that the court violated his due process rights under the state and federal constitutions because it accepted the jury's verdict of guilty of both reckless use of force in committing assault in the first degree and intentional use of force in committing robbery in the first degree when the offenses have different mental elements, but were based on the same act.[8] Thus, the defendant argues that the verdict finding him guilty of those charges was legally and logically inconsistent.[9] We disagree.

The defendant argues that the court improperly permitted the jury to return a verdict of guilty on both counts because the charges require mutually exclusive mental states. Specifically, the defendant argues that an intent to use force is legally and logically inconsistent with an intent to cause serious physical injury when applied to the same physical act against the same victim. He argues, therefore, that the verdict of guilty on both counts is violative of the prohibition against an inconsistent guilty verdict. See *State* v. *Hinton*, 227 Conn. 301,

[8] "Because the defendant has not analyzed any of his state constitutional claims separately from their federal counterparts, we shall consider only his federal constitutional claims. *State* v. *McMurray*, 217 Conn. 243, 248 n.6, 585 A.2d 677 (1991)." *State* v. *Fernandez*, 27 Conn. App. 73, 77 n.5, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992).

[9] The defendant also claims that the verdict of guilty of robbery in the first degree and kidnapping in the first degree, premised on the intentional use of force, and of reckless assault in the first degree is legally and logically inconsistent. The defendant further claims that the verdict of guilty of burglary in the first degree and reckless assault is legally and logically inconsistent. Finally, the defendant claims that the verdict of guilty of felony murder under the predicate felony of robbery or burglary with intent to commit robbery and of reckless assault is legally and logically inconsistent. Because we conclude that the law did not require the jury to base its verdict on the same act, we conclude that the verdict is not legally and logically inconsistent, and, therefore, we decline to address these claims.

313, 630 A.2d 593 (1993); *State* v. *King*, 216 Conn. 585, 594, 583 A.2d 896 (1990), on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1991).

The defendant concedes that he did not preserve this claim at trial. He seeks review, however, pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under the *Golding* doctrine, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id.

"The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *State* v. *Henry*, 253 Conn. 354, 359, 752 A.2d 40 (2000). We review the defendant's claim because the record is adequate for review and the claim is constitutional in nature. See *State* v. *Hinton*, supra, 227 Conn. 313–14 (reviewing similar claim under *Golding*). Because this is a question of law, our review is plenary.

"The general rule, to which we subscribe, was set forth by Judge Learned Hand in *Steckler* v. *United States*, 7 F.2d 59 (2d Cir. 1925), and was confirmed by Justice Holmes in *Dunn* v. *United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932). . . . Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. Id., 393. [Justice Holmes] went on to state: That the verdict

may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters. Id., 394." (Internal quotation marks omitted.) *State* v. *Harris*, 54 Conn. App. 18, 23, 734 A.2d 1027, cert. denied, 250 Conn. 925, 738 A.2d 660 (1999).

"We employ a less limited approach, however, when we are confronted with an argument that the verdicts are inconsistent as a matter of law or when the verdicts are based on a legal impossibility. . . . In response to such a claim, we look carefully to determine whether the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted. If that is the case, the verdicts are legally inconsistent and cannot withstand challenge." (Citations omitted.) *State* v. *Hinton*, supra, 227 Conn. 313.

"As is evident, however, the statutory definitions of 'intentionally' and 'recklessly' are mutually exclusive and inconsistent. 'Reckless conduct is not intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result.' . . . Therefore, the transgression that caused the victim's injuries was either intentional or reckless; it could not, *at one and the same time*, be both. . . . Where a determination is made that one mental state exists, to be legally consistent the other must be found not to exist. . . . 'By no rational theory could the jury have found the defendant guilty of both crimes.' . . . Logically then, the jury verdicts convicting the defendant of two offenses each of which requires a mutually exclusive and inconsistent state of mind as an essential element for conviction cannot stand." (Citations omitted; emphasis added.) *State* v. *King*, supra, 216 Conn. 593–94.

The following additional facts are necessary to resolve the defendant's claim. The state's substitute

information charged the defendant with, inter alia, robbery in the first degree in violation of § 53a-134 (a) (1) and assault in the first degree of a person sixty years of age or older in violation of § 53a-59a (a) based on the acts committed against Sarnick. Assault in the first degree "under circumstances evincing an extreme indifference to human life"; General Statutes § 53a-59 (a) (3); requires reckless conduct. Robbery in the first degree is a specific intent crime; *State* v. *Truppi*, 182 Conn. 449, 460, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); requiring a use of force for the purpose of compelling a victim to surrender his or her property. See General Statutes § 53a-133.

Hemingway testified that he held Sarnick down with a blanket and a pillow and stated that he told Sarnick that he would not hurt him if he told them where he kept the money. Hemingway further testified that he and the defendant started to beat Sarnick when Sarnick refused to tell them where he kept the money.

The defendant's argument lacks merit because it presumes that the jury could have found only that the defendant committed one continuous act of force. "In *State* v. *King*, supra, [216 Conn. 593], the defendant was charged with the crimes of attempted murder and assault in the first degree. Both counts were predicated on the same act carried out against the same victim. Id. While the attempted murder charge required proof that the defendant intended to cause the victim's death, however, the assault charge, as set forth in the information, required proof that the defendant recklessly created a risk of death to the victim. Id. The Supreme Court, noting the statutory definitions of 'intentionally' and 'recklessly' are mutually exclusive, vacated the convictions of assault in the first degree and attempted murder and ordered a new trial on both counts. Id., 603–604." *State* v. *Fernandez*, 27 Conn. App. 73, 93–94, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d

1330 (1992). The guilty verdict in the present case is distinguishable from that in *State* v. *King*, supra, 585, because the jury here was not required to find that the different acts committed by the defendant were in effect one act with one mental state. The jury was free to conclude that the defendant's actions constituted different crimes that occurred on an escalating continuum. Indeed, there is a compelling case for finding that the defendant committed multiple criminal acts against the same victim. See *State* v. *Fernandez*, supra, 92–94. For example, the jury reasonably could have found that the defendant acted intentionally when Hemingway held the pillow over Sarnick's head and demanded that he "give it up." Further, the jury could have found that that intent was transformed to recklessness when Sarnick refused to speak, and Hemingway and the defendant commenced the reckless assault by repeatedly striking Sarnick. Because the jury was not required to find that the defendant possessed the relevant mental states simultaneously, the verdict was not logically inconsistent.

## II

The defendant next claims that the court improperly instructed the jury regarding burglary with an intent to commit assault as the predicate felony. Specifically, the defendant argues that it is logically impossible to intend to commit a reckless act, and, therefore, the court violated his right to a fair trial when it instructed the jury that it could find him guilty of felony murder under a predicate felony of burglary with intent to commit assault, but instructed the jury only on reckless assault. We disagree.

The defendant concedes that he did not preserve this claim. He contends, however, that he is entitled to *Golding* review. We will review the defendant's claim because the record is adequate for review and the defen-

dant alleges a violation of a fundamental right, that is, that he was convicted of a nonexistent offense. See *State* v. *Toczko*, 23 Conn. App. 502, 505, 582 A.2d 769 (1990) ("defendant convicted of an offense of which he was never given notice has been deprived of a fundamental constitutional right and of a fair trial").

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995). [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . *State* v. *Figueroa*, 235 Conn. 145, 170–71, 665 A.2d 63 (1995)." (Internal quotation marks omitted.) *State* v. *Delgado*, 247 Conn. 616, 625, 725 A.2d 306 (1999).

We have thoroughly reviewed the charge in the present case and conclude that there is no reasonable possibility that the charge misled the jury. We further conclude that the defendant's claim that the jury could not, as a matter of law, have found as it did is without merit.

Here, the court charged the jury that it could find the defendant guilty of felony murder on the basis of robbery or burglary as the predicate felony. To find the

defendant guilty of felony murder on the basis of the predicate felony of robbery, the jury simply had to conclude that the defendant was guilty of causing a death during the commission of a robbery. The fact that it was robbery in the first degree is of no consequence. The only significance of robbery in the first degree is that serious physical injury occurred during the course of or flight from the robbery.

The information in the present case accused the defendant of robbery and burglary, and further alleged that in the course of and in furtherance of such crime or of flight therefrom, he or another participant did cause the death of Sarnick in violation of § 53a-54c. As stated in part I of this opinion, the jury reasonably could have found the defendant guilty of robbery. Robbery is an enumerated felony that qualifies as an element under our felony murder statute. See General Statutes § 53a-54c. The fact that the defendant was accused of robbery in the first degree does not change this result. Here, the state alleged that the defendant violated § 53a-134 (a) (1), and, to qualify under that section, the defendant must commit a robbery in violation of § 53a-133. We, therefore, reject the defendant's claim because the jury reasonably could have concluded that the defendant committed robbery as the predicate for felony murder.

### III

The defendant's final claim is that the court denied him his right to a fair trial when, during a recess, two jurors observed him in shackles as two sheriffs were transporting him to the courthouse lockup.

The following additional facts are necessary for our resolution of this issue. Following a luncheon recess and prior to the jury's return to the courtroom, the defendant's attorney informed the court that, during the recess, two jurors observed the defendant in handcuffs and shackles being escorted in the elevator by

two sheriffs. The court asked the defendant's attorney if he thought that the jurors were surprised that the defendant was in custody, and the defendant's attorney replied that he did not. The court further stated that it would instruct the jury to disregard the defendant's status as a prisoner. The court then asked the defendant's counsel whether he was moving for a mistrial on the basis of the incident. The defendant's counsel replied, "No. . . . I wouldn't get it anyway." The court later instructed the jury: "If during the course of the trial you—based on what you see in the courtroom or anywhere in the courthouse you come to believe that certain people might be in custody, whether it's a witness or the defendant, it shouldn't play any part in your deliberations whether someone's incarcerated or not. The defendant is presumed innocent unless and until the evidence proves him guilty beyond a reasonable doubt." The defendant did not object or pursue this issue again during the remainder of the trial.

The defendant concedes that he did not preserve this issue because he did not file a motion for a mistrial and did not object to the court's curative instruction. He claims, however, that he is entitled to *Golding* review. *State* v. *Golding,* supra, 213 Conn. 239–40.

Here, the defendant did not request a mistrial or object to the court's curative instruction. The record does not contain evidence that any of the jurors actually saw the defendant in shackles and, if they did, whether it prejudiced their capability to serve as jurors. Because the defendant has not provided this court with an adequate record relating to this claim, it fails under the first prong of *Golding.*

The judgment is affirmed.

In this opinion the other judges concurred.