STATE OF CONNECTICUT *v.* RANDY FLEMING
(AC 27836)

Bishop, Gruendel and Foti, Js.

Argued September 15—officially released November 25, 2008

*William B. Westcott*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Roger S. Dobris*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Randy Fleming, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134, larceny in the sixth degree in violation of General Statutes § 53a-125b, attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59, and carrying a pistol without a permit in violation of General Statutes § 29-35. On appeal, the defendant claims that the trial court improperly (1) denied his motion for a judgment of acquittal because the evidence was insufficient to support his conviction and (2) instructed the jury on the crime of attempt to commit assault in the first degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 26, 2005, just after midnight, Salim Ali, a cashier, was finishing his shift at the Quick and E-Z Deli (deli) on Washington Street in New Haven. Ali's colleague, Abdullah, was in the deli's back room. Ali observed a man, whom he later identified as the defendant, approach the deli and pull what Ali described as a "half mask" over his face. After the defendant entered the deli, Ali admonished him to remove the half mask from his face. The defendant ignored Ali's demand and approached the counter where Ali was standing. The defendant then pulled a handgun from his jacket pocket, pointed it at Ali and said, "this is a stickup, give me all your money." Ali gave the money from the cash register, a total of $38,

to the defendant, who placed it in his pocket, pointing the gun at Ali all the while.

The defendant, however, did not leave the deli but stood silent with the gun pointed at Ali. Trying to accommodate the defendant, Ali offered his own money, which was in his wallet in the pocket of his jacket hung up on the wall behind Ali, to his left in a small area out of view of the defendant. Ali assured the defendant that all he had in his jacket was his wallet, and, with his hands raised, Ali slowly moved toward his jacket. Ali lost sight of the defendant and thought that he had left the deli. Ali peered through a deli case, which had glass on both the front and back, trying to determine if the defendant had, indeed, left the deli. Ali saw the defendant crouching in front of the deli case. The defendant then fired two gunshots through the case at Ali, shattering the glass and cutting Ali's hands, causing him to bleed. By the time Ali's coworker, Abdullah, came from the back room and pushed the panic button alerting the police of the robbery, the defendant had left the deli. The police arrived, questioned Ali about the robbery and collected physical evidence.

On March 30, 2005, Detectives Joseph Pettola and Michael Wuchek of the New Haven police department went to another of Ali's places of employment in New Haven with a photographic array containing a photograph of the defendant. Ali selected the photograph of the defendant in the array but could not make a positive identification, stating that the defendant's face in the photograph was fuller than it was on the night of the robbery. Ali asserted that he nearly was certain that the person in the photograph was the man who robbed him on February 26, 2005, but requested that he see a more recent photograph.

On April 4, 2005, the defendant was arrested by the New Haven police for his alleged involvement in four

other robberies of local businesses that occurred on March 23 and 24, 2005. On April 5, 2005, Ali saw an article in the New Haven Register that contained a photograph of the defendant. The headline of the article was, "Elm City man facing robbery charges." The defendant was identified by name in the caption of the photograph. Soon after, Ali telephoned Pettola, telling him that he was certain that the man depicted in the photograph in the newspaper, the defendant, was the same man who had robbed him on February 26, 2005. The next day Ali went to the police department and met with Pettola and Wuchek. Ali again viewed a photographic array with a photograph of the defendant and seven other similar looking men.[1] Ali immediately identified the defendant as the man who had robbed the deli.

The defendant subsequently was charged with various crimes stemming from the alleged robberies of these local business establishments, including the February 26, 2005 robbery of the deli. The defendant's jury trial commenced in January, 2006. After closing arguments, the court instructed the jury. The jury found the defendant guilty only of the charges related to the robbery of the deli and found him not guilty of all other charges. On May 6, 2006, the court sentenced the defendant to a total effective term of fifteen years incarceration, execution suspended after eight years, with five years probation. This appeal followed. Additional facts will be set forth where necessary.

I

The defendant first claims that the court improperly denied his motion for a judgment of acquittal because the evidence was insufficient to sustain his conviction.

---

[1] The array was of color photographs and contained the photograph of the defendant taken by the New Haven police department after his arrest on April 4, 2005, which was also the same photograph that was in the New Haven Register on April 5, 2005.

Specifically, he argues that there was insufficient evidence to prove beyond a reasonable doubt (1) the identity of the robber and (2) that the defendant carried a pistol with a barrel length of less than twelve inches. We are not persuaded.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State v. Green*, 261 Conn. 653, 667, 804 A.2d 810 (2002).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State v. Sanchez*, 75 Conn. App. 223, 238–39, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Davis*, 68 Conn. App. 794, 798, 793 A.2d 1151, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002). Furthermore, "[i]n our review of the evidence to determine its sufficiency, we do not look at the evidence to see whether it supports the defendant's innocence. . . . Instead, our focus is whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Farnum*, 275 Conn. 26, 36, 878 A.2d 1095 (2005). Guided by these principles, we now turn to the defendant's specific claims.

A

The first argument posed by the defendant is that the evidence adduced at trial was insufficient to establish his identity as the perpetrator of the February 26, 2005 robbery. On the basis of our review of the record, we conclude that sufficient evidence existed from which the jury reasonably could have found that the defendant was the perpetrator of this robbery.

"It is black letter law that in any criminal prosecution, the state bears the burden of proving beyond a reasonable doubt the defendant's identity as one of the perpetrators of the crime charged." *State* v. *Smith*, 280 Conn. 285, 302, 907 A.2d 73 (2006). The defendant argues that the testimony of the one eyewitness to the robbery, Ali, was insufficient as a matter of law to support the conviction for two reasons. First, the defendant claims that Ali's ultimate identification of him was unreliable because it was made only after Ali saw a photograph of the defendant in a newspaper article alleging his

involvement in a string of local robberies. Second, the defendant asserts that because the perpetrator wore a mask, it was impossible for Ali to make a positive identification of the robber he encountered on February 26, 2005. The defendant emphasizes that Ali was unable, with certainty, to identify the defendant the first time the police showed him a photographic array on March 30, 2005. The defendant also underscores the span of time between the robbery, Ali's having seen the newspaper article and his ultimate identification of the defendant at the police station. The defendant contends that those factors indicate that the identification evidence adduced at trial was insufficient to support his conviction. We disagree.

The record reveals that the jury reasonably could have concluded that the defendant was the robber of the deli on February 26, 2005. Ali testified that he was 100 percent sure that the defendant was the man who robbed the deli that night. Ali supported this contention with testimony that he observed the defendant for an extended period of time, amounting to two minutes or more.[2] Furthermore, Ali testified that the deli was brightly lit and that the robber stood within two to three feet of him. Ali also testified that he purposefully paid very close attention to the robber's face. Additionally, Ali testified that the mask the robber wore was so thin that he saw much of the defendant's face *through it*. He also testified that the robber wore a "half mask," leaving exposed the man's mouth, nose, eyes, forehead and portions of his hair. Therefore, on the basis of that

---

[2] Our Supreme Court has declared that "when determining whether a witness had sufficient time to observe a defendant to ensure a reliable identification . . . a good hard look will pass muster even if it occurs during a fleeting glance. . . . In particular, we have recognized that a view of even a few seconds may be sufficient for a witness to make an identification . . . and that it is for the trier of fact to determine the weight to be given that identification." (Citations omitted; internal quotation marks omitted.) *State* v. *Morgan*, 274 Conn. 790, 801–802, 877 A.2d 739 (2005).

evidence, the jury reasonably could have concluded that Ali was able to recognize the defendant when shown the photographs of similar looking men at the police station several weeks after the robbery, despite any intervening events. This conclusion was bolstered significantly by the fact that Ali also was able to identify the defendant in court during the trial. See *State* v. *Morgan*, 274 Conn. 790, 802, 877 A.2d 739 (2005) ("in-court identifications . . . [are] sufficient evidence by themselves to allow the trier of fact to conclude that it was the defendant who committed the crimes charged").

Although the defendant, for various reasons, argues that Ali's testimony is not credible and therefore insufficient to support the conviction, it is fully within the province of the jury to determine what weight this testimony is afforded. "[W]e must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Mejia*, 233 Conn. 215, 224, 658 A.2d 571 (1995). Moreover, because the jury has the occasion to scrutinize the behavior, deportment and attitude of the witnesses and to measure their credibility, "[i]t is axiomatic that evidentiary inconsistencies are for the jury to resolve, and it is within the province of the jury to believe all or only part of a witness' testimony." *State* v. *Meehan*, 260 Conn. 372, 381, 796 A.2d 1191 (2002).

The contention that the defendant's photograph appeared in the newspaper and was observed by Ali prior to his positive identification of the defendant had somehow made insufficient the evidence regarding the robber's identity was also a matter for the jury. As we have just noted, the jury is the final arbiter as to the credibility of any witness. The jury was aware that Ali

had seen the defendant's photograph in the newspaper prior to his ultimate identification of him as the robber. The jury could have, therefore, chosen to afford this fact little or no weight or as much weight as it believed it deserved in the circumstances. "We do not sit as a [seventh] juror who may cast a vote against the verdict based upon . . . the cold printed record." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 68 Conn. App. 798.

Viewing the evidence in a light most favorable to sustaining the verdict, we conclude that Ali's testimony was sufficient to establish, beyond a reasonable doubt, the identity of the defendant as the perpetrator of the robbery.

B

The defendant next claims that the state presented insufficient evidence to support his conviction of the charge of carrying a pistol without a permit. Specifically, he argues that the state presented insufficient evidence of the barrel length of the firearm used in the robbery of the deli. On the basis of our review of the record, we conclude that sufficient evidence existed from which the jury reasonably could find that the barrel length of the firearm used in the robbery was less than twelve inches.

Section 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ." The terms "pistol" and "revolver," as used in § 29-35, are defined as "any firearm having a barrel less than twelve inches in length." General Statutes § 29-27. Accordingly, the defendant can be found guilty of violating § 29-35 (a) only if the state proves beyond a reasonable doubt that he was carrying a firearm that

had a barrel that was less than twelve inches long. See *State* v. *Perry*, 48 Conn. App. 193, 196, 709 A.2d 564, cert. denied, 244 Conn. 931, 711 A.2d 729 (1998). We recognize, however, that direct numerical evidence of barrel length is not required to obtain a proper conviction under § 29-35 (a). See *State* v. *Williams*, 231 Conn. 235, 251–52, 645 A.2d 999 (1994), overruled in part on other grounds by *State* v. *Murray*, 254 Conn. 472, 487, 757 A.2d 578 (2000) (en banc).

The following additional facts are necessary for the resolution of the defendant's claim. Ali testified that the defendant, on the night of the robbery, pulled a handgun out of his jacket pocket. He described the gun as flat, black and a "little bit big." During the robbery, the defendant fired two gunshots into the deli case in Ali's direction. At the deli, immediately after the robbery, the police recovered two spent .45 caliber shell casings and two spent bullets, the bullets being found behind the deli case.

At trial, James Stephenson, a firearms examiner from the state forensic science laboratory, testified that the majority of firearms that fire .45 caliber bullets are semiautomatic pistols. He further testified that his inspection of the spent bullets indicated that there were several possible manufacturers of the firearm used in the robbery. Included among the possible manufacturers were Colt, U.S. Military Firearms, Detonics, AMT, Fox, Browning, Kimber and Para-Ordnance.[3] The state, during Stephenson's testimony, introduced into evidence a photograph of a Colt .45 caliber semiautomatic pistol as an example of a firearm manufactured to fire the type of bullets found at the scene of the robbery. Stephenson indicated that the gun depicted in that photograph was representative of the class of firearm that

---

[3] Stephenson also testified that there could be other manufacturers of the weapon in question.

discharges the kind of spent casings and bullets found at the scene of the robbery. Detective Richard Pelletier of the firearms unit of the New Haven police department provided testimony concerning several manufacturers of semiautomatic .45 caliber pistols.[4] He indicated that none of those companies manufactured firearms with a barrel length of more than twelve inches capable of discharging the kind of spent casings and bullets found at the scene of the robbery.

Although the testimony of witnesses and the photograph of the Colt were the only evidence adduced at trial as to the length of the barrel of the firearm,[5] there was sufficient evidence for any rational jury to conclude that the gun barrel was less than twelve inches in length. We note that "[i]t is not one fact, but the *cumulative impact of a multitude of facts* which establishes guilt in a case involving substantial circumstantial evidence." (Emphasis added; internal quotation marks omitted.) *State* v. *Sanchez*, supra, 75 Conn. App. 238–39.

The police officer who interviewed Ali immediately after the incident testified that Ali told him that the defendant had used a handgun during the robbery. Ali testified that the defendant pulled the firearm from a jacket pocket. See *State* v. *Williams*, supra, 231 Conn. 252 (handgun pulled from jacket pocket supports inference that barrel less than twelve inches); *State* v. *Trotter*, 69 Conn. App. 1, 7, 793 A.2d 1172 (fact that gun fits in coat pocket supports inference that barrel less than twelve inches), cert. denied, 260 Conn. 932, 799 A.2d 297 (2002). Ali also testified that the defendant held the weapon at all times during the robbery with one hand and not both hands. See *State* v. *Williams*, 48 Conn. App. 361, 372, 709 A.2d 43 (jury can infer gun barrel

---

[4] Those manufacturers were Colt, U.S. Military Firearms, Detonic, Marlin, AMT, Para-Ordnance, Kimber and Sig.

[5] The weapon used in the robbery of the deli has not been recovered by police.

less than twelve inches by ability to handle firearm with one hand), cert. denied, 245 Conn. 907, 718 A.2d 16 (1998).

Last, Ali, when asked to describe the size of the gun, responded: "It big. A little bit bigger, like this." The phrase, "like this," is a clear indication that a gesture accompanied Ali's verbal response. Because the question posed by the prosecution asked Ali to describe the *size* of the weapon, the jury reasonably could infer that Ali's gesture was, indeed, a description of the size of that weapon. This court has concluded, in factually comparable circumstances, that a jury, after witnessing similar demonstrative evidence and being instructed on the state's burden of proving the length of the barrel of the gun, was "not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion." (Internal quotation marks omitted.) *State v. Williams*, supra, 48 Conn. App. 372. We therefore conclude, viewing the evidence in the light most favorable to sustaining the verdict, that the jury reasonably could have found that the firearm used by the defendant in the robbery of the deli had a barrel of less than twelve inches in length.

## II

Next, the defendant claims that the court improperly instructed the jury on the crime of attempt to commit assault in the first degree.[6] Specifically, he claims that

[6] The defendant was charged with attempt to commit assault in the first degree under General Statutes §§ 53a-49 and 53a-59 (a) (1). General Statutes § 53a-49 provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

although he was charged with violating § 53a-59 (a) (1), the court erroneously instructed the jury on the wrong subdivision of the statute, § 53a-59 (a) (5).[7] He contends that the court's instruction deprived him of fair notice of the charges against him and provided the jury a legally inadequate theory of liability. We disagree.

The defendant failed to preserve his claim and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] "This court has held that only under the most exceptional circumstances will it consider a claim, constitutional or otherwise, that has not been raised [in] and decided by the trial court. . . . However, [i]t is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . Consequently, the failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Citations omitted; internal quotation marks omitted.) *State* v. *Knight*, 56 Conn. App. 845, 849–50, 747 A.2d 13 (2000). Accordingly, we agree with the defendant that "the jury instruction is subject to *Golding* review because the

---

[7] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause *serious physical injury* to another person, he causes such injury to such person or to a third person *by means of a deadly weapon or a dangerous instrument; or* . . . (5) with intent to cause *physical injury* to another person, he causes such injury to such person or to a third person *by means of the discharge of a firearm.*" (Emphasis added.)

[8] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

defendant raises a constitutional claim involving a fundamental right, and the record is adequate for review." *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995).

The following additional procedural history is necessary for our review of the defendant's claim. On April 19, 2005, the defendant was charged formally by information with, among other crimes, attempt to commit assault in the first degree in violation of §§ 53a-49 and 53a-59.[9] The defendant subsequently was charged specifically with violating § 53a-59 (a) (1) on the final long form information filed with the court on January 19, 2006. On that day, following closing arguments, the court gave its final instructions to the jury. The court, when giving the jury instruction for attempt to commit assault in the first degree, instructed it on § 53a-59 (a) (5).

The court's jury instruction, in relevant part, provided: "In count three, the state accuses the defendant of criminal attempt to commit assault in the first degree by means of a discharge of a firearm in violation of §§ 53a-49a (2) and 53a-59 (a) (5) of the Penal Code. The crime of assault in the first degree is described by our statute as follows: A person is guilty of assault in the first degree when, with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a discharge of a firearm. . . .

"So, the first element the state has to prove in this case beyond a reasonable doubt is that the defendant had the kind of mental state required for the commission of a crime of assault in the first degree. And the intent for that crime is the intent to cause physical injury to another person. . . .

[9] At that point, the defendant had not been charged under any particular subdivision of General Statutes § 53a-59.

"So, the state has to prove both intent and conduct beyond a reasonable doubt to obtain a conviction in this case. The crime of criminal intent to commit assault in the first degree as charged in count [three], this [crime] has four elements which the state must prove beyond a reasonable doubt—that the defendant intended to cause physical injury to another person, that he attempted, as I define that word to you, to cause physical injury to that person or [a] third person, that he attempted to cause that injury by means of a discharge of a firearm. With regard to the intent to cause physical injury: physical injury as defined by our statutes means the impairment of physical condition or pain. The state must prove beyond a reasonable doubt [that] the defendant intended to cause physical injury to another person, [and] what the defendant intended is a question of fact for you to determine guided by the instructions on intent that I've already given you.

"The next element the state must prove beyond a reasonable doubt is that the defendant attempted to cause physical injury by means of a discharge of a firearm, and I've defined that term for you before. Once again, this charge involves a criminal attempt as I've defined that for you and not the completed act; that is, it's not necessary that the defendant actually caused physical injury to anybody in order to constitute the crime in this case, but only that you find beyond a reasonable doubt that he attempted to do so.

"If you find all the elements that I've just described to you to be proved by the state beyond a reasonable doubt, then you'll find the defendant guilty of attempted assault in the first degree in the [third] count. If you find that the state has failed to prove any of those elements beyond a reasonable doubt, then you'll find the defendant not guilty of that charge."

We agree with the defendant, and the state concedes, that the court did not correctly instruct the jury on

attempt to commit assault in the first degree under the subdivision that he was ultimately charged with violating. The subdivision under which the defendant was charged and the subdivision on which the court instructed the jury differ in two respects. First, § 53a-59 (a) (1), the subdivision under which the defendant was charged, requires the state to prove that the injury was attempted "by means of a deadly weapon," while § 53a-59 (a) (5), the subdivision the court used in its instructions to the jury, requires proof that the injury was attempted "by means of the discharge of a firearm." Second, § 53a-59 (a) (1) requires the state to prove that the defendant intended to cause *serious* physical injury, while under § 53a-59 (a) (5), the burden is to prove only an intention to cause physical injury. Our Supreme Court, however, has stated: "If an improper jury instruction is of constitutional magnitude, the burden is on the state to prove harmlessness beyond a reasonable doubt. . . . [A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Internal quotation marks omitted.) *State* v. *Cote*, 286 Conn. 603, 626, 945 A.2d 412 (2008). Additionally, this court has stated that "[w]hen a jury is misinstructed on an essential element of a crime and a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." (Internal quotation marks omitted.) *State* v. *Youngs*, 97 Conn. App. 348, 361, 904 A.2d 1240, cert. denied, 280 Conn. 930, 909 A.2d 959 (2006).

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge

to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 864–65, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006). With this in mind, we turn to the elements of § 53a-59 at issue and the evidence adduced at trial.

First, as to the element of the statute concerning the type of weapon the state had to prove was used in the attempt to commit assault, our review of the jury instruction as a whole leads us to conclude that the jury was not misled. The jury charge, a written copy of which the jury had during its deliberations, included instructions pertaining to a count for robbery in the first degree that occurred in conjunction with the alleged attempt to commit assault. That portion of the jury charge contained a definition of a deadly weapon that stated in relevant part: "In addition to proving that the defendant committed robbery, as I have defined it, the state must also prove beyond a reasonable doubt that in the course of a commission of a robbery, the defendant was armed with a deadly weapon. Deadly weapon means, *for purposes of this case, any weapon whether loaded or unloaded from which a [gun]shot may be discharged.* You should note that under this definition

a weapon from which a shot may be discharged, including a pistol or a rifle or a shotgun, whether or not actually loaded at the time of the offense, is classified as a deadly weapon, and furthermore, the word 'armed' simply requires that the person be—that the weapon be in the defendant's possession." This definition, read in the context of not only the whole jury charge, but also the entire evidence, indicates clearly that the jury was not reasonably misled with respect to the misinstruction as to whether a firearm or deadly weapon was used in the alleged attempt to commit assault. This is so especially in light of the fact that the defendant was found guilty of this count of robbery in the first degree and, therefore, found beyond a reasonable doubt to have been armed with a "deadly weapon"—the very same deadly weapon the state alleged the defendant used in the attempt to commit assault.

As for the second deviation in the jury instructions from the operative information, the omission of the word "serious" in regard to the physical injury intended by the defendant, we conclude that this misinstruction is harmless beyond a reasonable doubt because the allegation of serious physical injury was not contested by the defendant and supported by overwhelming evidence. General Statutes § 53a-3 (4) defines "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." Mere "physical injury," however, is defined in General Statutes § 53a-3 (3) simply as "impairment of physical condition or pain . . . ." Although frequently it may be difficult to differentiate between the two, such a distinction need be drawn, as a person can be found guilty of assault in the first degree under General Statutes § 53a-59 (a) (1) *only* if he "causes serious physical injury to another person . . . ." See *State v. Rossier*, 175 Conn. 204, 207, 397 A.2d 110 (1978).

We have concluded previously that "intent is often inferred from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Smith*, 73 Conn. App. 173, 181, 807 A.2d 500, cert. denied, 262 Conn. 923, 812 A.2d 865 (2002). Here, we conclude that the state's evidence overwhelmingly supports a finding that the defendant's intent was to inflict a serious physical injury. There was undisputed evidence that the perpetrator shot at Ali with a firearm. Furthermore, the gunshots were aimed at his midsection and fired at close range. There can be no doubt that such action "creates a substantial risk of death, or . . . serious disfigurement . . . impairment of health or . . . loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4). We also note that this evidence went uncontested by the defendant. The defendant's main argument against the charges at trial was one of misidentification. He did not dispute that a robbery occurred, that a firearm was used in that robbery, that the perpetrator shot at Ali or that the perpetrator's intent was to cause serious physical injury.[10]

It was on the basis of this unequivocal evidence that the jury found the defendant guilty of attempt to commit assault in the first degree. The court's misinstruction as to the subdivisions of the statute with which the defendant was charged was harmless beyond a reasonable doubt and did not mislead the jury.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] In his closing argument, the defendant's counsel stated: "I suspect that the [robbery] did happen. We deny that my client did this."