STATE OF CONNECTICUT *v.* ALIKA MCFARLANE
(AC 31808)

Lavine, Alvord and Stoughton, Js.

Argued February 9—officially released May 17, 2011

*David J. Reich*, special public defender, for the appellant (defendant).

*Melissa Patterson*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, former state's attorney, and *Cynthia S. Serafini*, senior assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant, Alika McFarlane, appeals from the judgment of conviction, rendered following a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (5),[1] reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a)[2] and carrying a pistol without a permit in violation of General Statutes § 29-35.[3] On appeal, the defendant claims that: (1) the court's instructions permitted the jury to return legally inconsistent verdicts on the assault and reckless endangerment charges; and (2) the evidence was insufficient to support his conviction of carrying a pistol without a permit. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On May 20, 2008, as a result of a confrontation the prior day between Dennis Rolan and members of a gang known as the "Triple Bs," the defendant, Rolan and five others went to Bronson Street in Waterbury, where the Triple Bs were known to be located, in order to fight the individuals who had confronted Rolan. When the defendant and his group arrived, they parked their vehicles and ran toward several members of the Triple Bs, including Glenn Jamison, who were located on Bronson Street in front of a convenience store. As the two groups

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[2] General Statutes § 53a-63 (a) provides: "A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

[3] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

converged, Jamison punched the defendant in the face. He and the defendant separated, and each began fighting other group members. The defendant then pulled a handgun from his waist and fired five shots into the crowd of participants in the fight, one of which struck Jamison in his left arm and abdomen. The crowd then dispersed, and the defendant fired another shot as he ran back toward his car.

The state charged the defendant in a three count substitute information with assault in the first degree in violation of § 53a-59 (a) (5), reckless endangerment in the first degree in violation of § 53a-63 (a) and carrying a pistol without a permit in violation of § 29-35. Following a jury trial, the jury returned a verdict of guilty on each count, and the court rendered judgment accordingly. This appeal followed. Additional facts, which the jury reasonably could have found, will be set forth as necessary.

I

The defendant first claims that the court's jury instructions allowed the jury to return legally inconsistent guilty verdicts on the assault and reckless endangerment charges. The defendant concedes on appeal that this claim was not preserved at trial but nevertheless seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] Although we conclude that the record is adequate for review and the claim is

---

[4] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

of constitutional magnitude; see *State* v. *Mooney*, 61 Conn. App. 713, 719, 767 A.2d 770 (claim that guilty verdicts legally inconsistent constitutional in nature), cert. denied, 256 Conn. 905, 772 A.2d 598 (2001); the defendant has failed to demonstrate that a constitutional violation clearly exists.

The following additional facts and procedural history are relevant to our resolution of this claim. In the first count of the substitute information, in which the defendant was charged with assault in the first degree, the state alleged specifically that the defendant, "with intent to cause physical injury to another person, caused such injury . . . by means of the discharge of a firearm, to wit: he shot Glenn Jamison in the arm and stomach." The court, in defining the elements of this crime, instructed the jury, inter alia, that the state was required to prove beyond a reasonable doubt that the defendant "caused physical injury to . . . Jamison by means of the discharge of a firearm," and that "when [he] did so he had the intent to cause physical injury to . . . Jamison or to a third person." In the second count, the state's attorney charged the defendant with reckless endangerment in the first degree, and alleged specifically that, "with extreme indifference to human life," the defendant "recklessly engaged in conduct which created a risk of serious physical injury to another person." After defining the elements of this crime to the jury, the court instructed as follows: "The state claims that the defendant acted recklessly and with extreme indifference to human life by pulling out a handgun on Bronson Street and firing the gun six times. The state further claims that this conduct created a risk of serious physical injury to . . . Jamison and the other individuals on Bronson Street at the time the defendant fired the handgun." It also instructed the jury that the defendant, by pleading not guilty, placed all the essential elements of the crimes at issue.

The defendant contends that the court's instructions permitted the jury to return a verdict of guilty on both the assault and reckless endangerment counts, which was improper because each crime contains a mutually exclusive mental state, namely, those of intentionality and recklessness. Specifically, he argues that it would be inconsistent for the jury to find that the defendant both intended to cause physical injury and simultaneously acted recklessly because an individual cannot act intentionally and recklessly with regard to the same act and the same result. See *State* v. *Hinton,* 227 Conn. 301, 315, 630 A.2d 593 (1993); *State* v. *King,* 216 Conn. 585, 593–94, 583 A.2d 896 (1990), on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1991). We are not persuaded that the court's instructions permitted this result.

"The issue of legal inconsistency typically arises when a defendant is convicted of two offenses that contain contradictory elements." (Internal quotation marks omitted.) *State* v. *Hazel,* 106 Conn. App. 213, 222, 941 A.2d 378, cert. denied, 287 Conn. 903, 947 A.2d 343 (2008). "To determine whether a jury verdict is legally inconsistent, we look carefully to determine whether the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted. If that is the case, the verdicts are legally inconsistent and cannot withstand challenge. . . . Put more simply, we determine if there is a rational theory by which the jury could have found the defendant guilty of both crimes. . . . It is not inconsistent . . . to find that a criminal defendant possesses two different mental states, as long as [the] different mental states relate to different results." (Citation omitted; internal quotation marks omitted.) *State* v. *Kuranko,* 71 Conn. App. 703, 714, 803 A.2d 383 (2002). Because the resolution of a claim of inconsistent guilty verdicts presents a

question of law, our review is plenary. *State* v. *Hazel*, supra, 223.

It seems evident that one who deliberately shoots at another person acts intentionally, while one who shoots into a crowd acts recklessly. Indeed, the defendant does not suggest to the contrary. In order to establish his claim that the verdicts in this case were legally inconsistent, he asserts, in essence, that the court defined the reckless act to the jury as firing the handgun six times into the crowd. He argues that, on the basis of such instruction, the six shots constituted one unified physical act, with one such shot necessarily being the one that struck Jamison. According to the defendant, therefore, both the assault charge and the reckless endangerment charge, as defined by the court, involved the same unified act.

The defendant's assertion fails, however, because the court never instructed the jury that the defendant's firing the handgun six times was a single act. Instead, after instructing the jury on the elements of the crime of reckless endangerment, the court remarked that it was the state's position that the defendant acted recklessly by firing the handgun six times into the crowd on Bronson Street. Contrary to the defendant's argument, our review of the instructions reveals that the court's recitation of the state's allegations did not instruct the jury in a manner that required it to find that the crimes were committed by the same physical act.

Furthermore, even if we assume, arguendo, that the defendant's firing of the handgun six times constituted the same physical act, rather than separate acts, the defendant cannot prevail on his claim. On the basis of the evidence presented in this case, the jury reasonably could have found that when the defendant fired the handgun into the crowd, it was his intent to strike and to injure Jamison physically, as evidenced by the fact

that Jamison was the member of the Triple Bs who first punched the defendant. That is certainly a permissible and perhaps the most reasonable inference the jury could have drawn. At the same time, the jury reasonably could have found that it was reckless and extremely indifferent to human life to fire a gun several times into a nearby crowd. Under the circumstances of this case, it was not inconsistent to find that the defendant acted intentionally when he shot Jamison and at the same time acted recklessly when he fired several other shots into a crowd, as the jury reasonably could have concluded that the defendant's actions constituted different crimes that arose from the same continuum of events. See *State* v. *Mooney*, supra, 61 Conn. App. 722; see also *State* v. *Bjorklund*, 79 Conn. App. 535, 567–68, 830 A.2d 1141 (2003) (reasonable for jury to conclude that defendant's kicking victim in torso in attempt to steal wallet exhibited intent to cause serious injury while subsequent kicking of head after victim resisted was reckless), cert. denied, 268 Conn. 920, 846 A.2d 882 (2004); *State* v. *Flynn*, 14 Conn. App. 10, 27, 539 A.2d 1005 (single act of throwing beer bottle at police officers in crowded bar simultaneously demonstrated intent to assault peace officer and reckless endangerment toward bar patrons), cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). We therefore conclude that this claim fails under the third prong of *Golding* because the defendant has not shown that a constitutional violation clearly exists. See footnote 4 of this opinion.

## II

The defendant next claims that the evidence was insufficient to support his conviction of carrying a pistol without a permit in violation of § 29-35.[5] Specifically,

---

[5] Although the defendant did not preserve his claim, we afford review because "any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*." (Internal quotation marks omitted.) *State*

the defendant contends that the state failed to prove that the handgun he fired had a barrel of less than twelve inches in length and met the statutory definition of a pistol.[6] We disagree.

In reviewing whether the evidence was sufficient to sustain a conviction, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether on the facts so construed and the inferences reasonably drawn therefrom, the finder of fact reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. *State* v. *Ledbetter*, 275 Conn. 534, 542, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006). We do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the finder of fact's guilty verdict. Id., 543

The following additional facts are relevant to the resolution of this claim. At trial, the handgun fired by the defendant was not introduced into evidence. The state, instead, presented certain forensic evidence and witness testimony to establish that the barrel length of the firearm was shorter than twelve inches. The state produced six .45 caliber cartridge casings recovered by the police at the crime scene and a .45 caliber bullet taken from Jamison's body that had been fired from a .45 caliber gun. The state's expert explained that such a gun generally has a barrel length of twelve inches or less, with most being between four and eight inches, and would not have a long barrel. In addition, Brian

---

v. *Fagan*, 280 Conn. 69, 76 n.7, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

[6] General Statutes § 29-27 provides that the terms " 'pistol' " and " 'revolver,' " as used in General Statutes §§ 29-28 to 29-38, inclusive, mean "any firearm having a barrel less than twelve inches in length."

Greene, a witness called by the state, testified that he saw the defendant pull out the gun from his waist and that it was a handgun, not a long gun. When asked by the prosecutor how big the gun was, Greene demonstrated by holding up his hands. The prosecutor then requested that the record reflect that Greene indicated that the gun was approximately nine inches, to which defense counsel did not object but, instead, remarked that he could not "say one way or the other." In its charge to the jury, the court instructed that in order to find the defendant guilty of carrying a pistol without a permit, the jury must find, inter alia, that the length of the barrel of the defendant's firearm was less than twelve inches.

At the outset, we note that direct numerical evidence of barrel length is not required to obtain a conviction under § 29-35. *State* v. *Fleming*, 111 Conn. App. 337, 347, 958 A.2d 1271 (2008), cert. denied, 290 Conn. 903, 962 A.2d 794 (2009). Furthermore, the evidence presented in this case is similar to what we concluded was sufficient in *State* v. *Williams*, 48 Conn. App. 361, 372, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998). In *Williams*, the defendant appealed from his conviction of carrying a pistol without a permit on the ground that the evidence presented at trial was insufficient to establish that the barrel length of the gun was less than twelve inches. Id., 370. The only evidence presented by the state with respect to the length of the gun barrel came from the state's chief witness, who testified that he saw the defendant brandish a " 'long, big, thick gun' " that was "as much as a foot long." Id., 371. The witness also demonstrated to the jury the size of the gun by spreading his hands apart. Id. Although the record did not reflect exactly how far apart his hands were, this court concluded that the cumulative effect of the witness' testimony and demonstrative evi-

dence was sufficient to permit the jury to infer reasonably that the barrel of the gun used in that case was less than twelve inches. Id., 372.

The jury in the present case saw the demonstration by Greene as to the size of the gun, and as the court observed in *Williams*, the jury reasonably could have inferred that the length of the barrel of the gun was less than the length of the entire gun. See id., 372. Greene also offered his testimony that the gun used by the defendant was a handgun rather than a long gun and was pulled from the defendant's waist. In addition, the jury heard testimony from the state's firearms expert that the barrel of a .45 caliber gun generally would be less than twelve inches and often between four and eight inches in length. We conclude that the state presented sufficient demonstrative and testimonial evidence, viewed in the light most favorable to sustaining the verdict, from which the jury reasonably could have found that the defendant's handgun had a barrel of less than twelve inches in length and therefore was within our statutory definition of a pistol. See *State v. Fleming*, supra, 111 Conn. App. 347–49 (expert testimony suggesting majority of firearms that fire caliber of bullets and casings found at crime scene less than twelve inches coupled with description of handgun as " 'little bit big' " and pulled from jacket sufficient to support inference that barrel less than twelve inches).

The judgment is affirmed.

In this opinion the other judges concurred.