## STATE OF CONNECTICUT *v.* ADOLPH WILLIAMS
### (AC 15742)

O'Connell, C. J., and Schaller and Cretella, Js.

Argued December 15, 1997—officially released April 7, 1998

*Richard Emanuel,* with whom, on the brief, were *Kim E. Kerber* and *Christine A. Robinson,* certified legal interns, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict,* state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General

Statutes § 53a-55 (a) (1),[1] carrying a pistol without a permit in violation of General Statutes § 29-35,[2] and commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k.[3] On appeal, the defendant claims that the trial court improperly (1) admitted the hearsay statement of a witness regarding a threat made against the victim by the defendant's brother, (2) concluded that sufficient evidence was presented at trial to prove the defendant's guilt beyond a reasonable doubt on the charge of carrying a pistol without a permit, (3) instructed the jury on the definition of reasonable doubt, and (4) violated the defendant's constitutional right against double jeopardy when it convicted him of both manslaughter in the first degree and the commission of a class A, B or C felony with a firearm. We vacate the conviction of the violation of § 53-202k and affirm the judgment of the trial court in all other respects.

The jury reasonably could have found the following facts. On September 11, 1994, Andrew Mathis, Lori Thompson and the victim, Bradley Grandison, were on Wilmot Avenue in Bridgeport. Mathis, who was the state's chief witness, testified that he was selling crack cocaine with Grandison serving as his lookout to direct

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person . . . ."

[2] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

[3] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3 . . . shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

customers from the street to Mathis, who was waiting out of view. The three had just finished smoking crack cocaine when Thompson, Grandison's girlfriend, left the scene to go to a nearby restaurant. As Mathis and Grandison were engaged in drug transactions, a car pulled up to the curb with the passenger side facing Grandison. Mathis identified the passenger as the defendant, Adolph Williams.

Mathis testified that he heard the defendant say to Grandison, "My brother wants his money." Mathis also heard the defendant mention the sum of $100. Grandison responded that he did not have the money to pay the defendant. Grandison then moved close to the car and stuck his head inside the passenger side window. Mathis could not hear the ensuing conversation, but saw Grandison back away from the car. Mathis then saw a large silver gun in the defendant's hand and heard the defendant say, "You think I'm playing?" The defendant got out of the car with the gun in his hand and said, "I want the money." From a distance of four to five feet, the defendant fired several shots at Grandison, who was unarmed. Mathis observed the defendant point the gun downward so as to shoot Grandison in the legs. Grandison fell to the ground and the defendant got back into the car, which was driven away from the scene. Mathis ran from the scene after the shooting.

Thompson heard gunshots as she was returning from the restaurant. She saw the car speed away but got only a brief glimpse of the driver, whom she recognized but could not name. She ran to the scene and saw Grandison lying on the ground. He was unable to speak. Grandison was taken to a hospital where he later died from multiple gunshot wounds to the legs, chest and abdomen. Thompson had also been present at the same location on Wilmot Avenue several days prior to the shooting when Grandison and the defendant's brother, Terrence

Williams, were arguing. Thompson testified, over objection, that she heard Terrence Williams tell Grandison that "he was going to shoot him if he did not get his money" and that Grandison responded that he did not have any money.

At trial, the defendant, who was then seventeen years old, testified in his own defense and claimed that he did not know Grandison and was not near the scene of the crime on the day in question. He testified that he was at the house of a friend's girlfriend, approximately five or six blocks away from the scene, during the time of the shooting.

On November 30, 1995, after a six day trial, the jury found the defendant not guilty of the crime of murder, but guilty of the lesser included offense of manslaughter in the first degree. The jury also found the defendant guilty of the charges of carrying a pistol without a permit and commission of a class A, B or C felony with a firearm. On January 19, 1996, the trial court sentenced the defendant to fifteen years imprisonment suspended after eight years and five years probation on the charge of manslaughter, one year imprisonment to run concurrently on the charge of carrying a pistol without a permit, and five years imprisonment to run consecutively on the charge of commission of a felony with a firearm. The total effective sentence was fifteen years,[4] execution suspended after thirteen years, and five years probation. This appeal followed.

I

The defendant first claims that the trial court improperly admitted the hearsay statement of Thompson

---

[4] We note that both the judgment file and the revised mittimus dated February 28, 1996, state that the total effective sentence is fifteen years, execution suspended after thirteen years. We believe this to be a clerical error because a review of the individual sentences for each count reveals that the total effective sentence should be twenty years, fifteen years for manslaughter in the first degree plus five years under § 53-202k, suspended

regarding the threat made by the defendant's brother against the victim several days prior to the shooting. Specifically, the defendant claims that the trial court admitted the hearsay statement although no recognized exception to the hearsay rule justified its admission. We conclude that the statement was not offered to prove the truth of the matter asserted and, therefore, was not hearsay. As a result, it was proper for the trial court to admit the statement.

The defendant's claim is an evidentiary one, and " '[t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion.' " *State* v. *Bruno*, 236 Conn. 514, 549, 673 A.2d 1117 (1996). "The trial court also has broad discretion in balancing the probative value of proffered evidence against its prejudicial effect. That discretion is subject to reversal only where an abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Weber*, 31 Conn. App. 58, 65, 623 A.2d 506, cert. denied, 226 Conn. 908, 625 A.2d 1379 (1993).

The trial court admitted the testimony regarding the out-of-court statement of the defendant's brother on the ground that it was a third party threat, which is admissible against the defendant where there was some connection between the threat and the defendant, pursuant to *State* v. *Leecan*, 198 Conn. 517, 533–34, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986), and *State* v. *Taft*, 25 Conn. App. 578, 584–85, 595 A.2d 918, cert. denied, 220 Conn. 921, 597 A.2d 343 (1991). The trial court's admission of the statement under this authority was incorrect. This was not a situation where a prospective witness in a pending criminal proceeding was threatened by a third party

---

after thirteen years. Because we are remanding the case for resentencing, this apparent clerical error can be corrected at that time.

connected to the defendant, where the evidence was introduced to show the defendant's consciousness of guilt, as was the case in *Leecan* and *Taft*. Nevertheless, we conclude that the statement was admissible because it was not hearsay; it was not introduced to prove the truth of the matter asserted in the statement. Despite the trial court's incorrect basis for admitting the statement, we can sustain admission of the evidence if other proper grounds exist for admission of the statement. *Johnny Cake, Inc.* v. *Zoning Board of Appeals*, 180 Conn. 296, 301, 429 A.2d 883 (1980); see *Polymer Resources, Ltd.* v. *Keeney*, 32 Conn. App. 340, 348, 629 A.2d 447 (1993).

Thompson testified that she heard the defendant's brother threaten to shoot the victim if he did not pay a debt owed to him. We conclude that this testimony was relevant because it tended to connect the defendant to the crime charged. The only eyewitness to the crime testified that immediately prior to the fatal shooting, he heard the shooter demand payment of a $100 debt owed to his brother. When the victim stated that he did not have the money, the shots were fired that resulted in the victim's death. Thus, the statement was introduced to prove the defendant's motive for shooting the victim: to collect the debt owed to his brother.

"Hearsay is an out-of-court statement that is offered to establish the truth of the facts contained in the statement. . . . *State* v. *Miller*, 154 Conn. 622, 629, 228 A.2d 136 (1967), and *Murray* v. *Supreme Lodge, N.E.O.P.*, 74 Conn. 715, 718, 52 A. 722 (1902). A statement may or may not be hearsay, depending upon the purpose for which it is offered. When declarations are offered . . . for the purpose of showing that such statements were made and not that what was declared was true, they do not come within the rule. . . . *McDermott* v. *McDermott*, 97 Conn. 31, 37–38, 115 A. 638 (1921); *Engel* v. *Conti*, 78 Conn. 351, 354, 62 A. 210 (1905)." (Citations

omitted; internal quotation marks omitted.) *State* v. *Jaynes*, 35 Conn. App. 541, 548, 645 A.2d 1060, cert. denied, 231 Conn. 928, 648 A.2d 880 (1994).

An out-of-court statement introduced to prove the motive of the accused, but not the truth of the matter asserted in the statement, is admissible. *State* v. *Alvarez*, 216 Conn. 301, 311, 579 A.2d 515 (1990). In *Alvarez*, the state offered a declarant's statements "not for the truth of the matter asserted therein, but rather to show the effect of the statements upon the defendant. The jury could infer from the statements that the defendant had a motive to kill the victim. *United States* v. *Cline*, 570 F.2d 731, 734 (8th Cir. 1978). This is not hearsay. *State* v. *Hull*, [210 Conn. 481, 498–99, 556 A.2d 154 (1989)]; *State* v. *Gonzales*, 186 Conn. 426, 429, 441 A.2d 852 (1982); C. McCormick, Evidence (3d Ed. [1984]) § 249 [pp. 733–34].

"It is not material whether [the declarant] in fact wanted the victim killed or whether in fact the victim owed [the declarant] money. Because the testimony was offered to show the defendant's motive for shooting the victim, its admissibility does not depend upon the truth of the statements uttered by [the declarant]. *United States* v. *Cline*, supra [570 F.2d 734]. The inability to assess the credibility of [the declarant's] statements was, therefore, immaterial. The question of whether the words were spoken or not was a matter within [the witness'] knowledge. Id., 735. Since he was under oath and subject to cross-examination no hearsay dangers were posed by his testimony. Id.; *United States* v. *Hicks*, 848 F.2d 1, 3 (1st Cir. 1988)." (Internal quotation marks omitted.) *State* v. *Alvarez*, supra, 216 Conn. 311.

In the present case, the statement at issue was not introduced for its substantive truth, and therefore was not hearsay. "The matter asserted [in an out-of-court

statement is] the matter asserted by the writing or speech, not the matter asserted by the proponent of the evidence." (Internal quotation marks omitted.) *State* v. *Esposito*, 223 Conn. 299, 315, 613 A.2d 242 (1992). In this case, the truth of the matter asserted in the statement would relate to the existence of the debt and the threat that Grandison would meet with violence at the hands of the defendant's brother if that debt was not paid. The state did not introduce the statement for purposes of proving any of these matters because none of these matters was at issue in the trial. The statement was introduced to prove the identity of the defendant in connection with his brother's threat, and to refute the defendant's claimed alibi. The existence of the threat made by the defendant's brother tended to connect the defendant to the crime and to prove his motive for committing the crime. While motive is not an element of the crime that the state must prove beyond a reasonable doubt, it was an important factor in this case because the identity of the shooter was the critical issue at trial. For these reasons, we conclude that the statement was not introduced to prove the truth of its content and, therefore, was properly admitted by the trial court.

The defendant alternatively claims that if the statement was admissible, its prejudicial effect on the defendant substantially outweighed its probative value and, as a result, it should have been excluded by the trial court. We already have noted that this statement was relevant because it was probative on the issue of the defendant's motive to kill the victim, an important component of this case. Accordingly, the trial court did not abuse its discretion in admitting the statement. See *State* v. *Marra*, 222 Conn. 506, 517–23, 610 A.2d 1113 (1992) (probative value exceeded prejudicial effect and any prejudicial effect impacted weight, not admissibility of evidence). We therefore conclude that the probative

value of the statement outweighed any prejudicial effect to the defendant.

## II

The defendant next claims that the trial court improperly concluded that there was sufficient evidence presented to prove his guilt beyond a reasonable doubt on the charge of carrying a pistol without a permit in violation of § 29-35. Specifically, the defendant claims that the state presented insufficient evidence regarding whether the size of the barrel of the gun used by the shooter was less than twelve inches in length, as provided in General Statutes § 29-27.[5] We do not agree.

As a preliminary matter, we note that this claim was not raised at trial. The defendant seeks review of this claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[6] We agree with the defendant that this claim is reviewable on the basis of *State* v. *Hamilton*, 30 Conn. App. 68, 71, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994), where we reviewed an identical claim under *Golding*.

The following additional facts are necessary for proper resolution of this claim. Mathis testified at trial

---

[5] General Statutes § 29-27 provides: "The term 'pistol' and the term 'revolver', as used in sections 29-28 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length."

[6] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Lasky*, 43 Conn. App. 619, 631 n.5, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997).

regarding the size of the gun that he saw the defendant brandish during the shooting. Mathis testified that he was familiar with guns, that the gun was "big," that it "looked like a .357," but that it could have been a .45. He stated that it was as much as a foot long, a "long, big, thick gun." Mathis held up his hands and spread them apart to demonstrate the size of the gun to the jury.

" 'When reviewing a sufficiency of the evidence claim, we first examine the evidence in the light most favorable to upholding the jury's verdict. *State* v. *Avis*, 209 Conn. 290, 309, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989); *State* v. *Rice*, 25 Conn. App. 646, 650, 595 A.2d 947 (1991). We then determine on the basis of the facts established and the inferences that reasonably could be drawn from those facts whether the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti*, 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Hopes*, 26 Conn. App. 367, 376, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. *State* v. *Robinson*, 213 Conn. 243, 254, 567 A.2d 1173 (1989).' *State* v. *Lago*, 28 Conn. App. 9, 30, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 828 (1992). Our inquiry into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.) *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). Once a defendant has been

found guilty of the crime charged, we conduct our judicial review of all of the evidence in the light most favorable to the prosecution. Id., 564." *State* v. *Hamilton*, supra, 30 Conn. App. 71–72.

While the only evidence presented with respect to the length of the gun barrel came from Mathis' testimony, there was sufficient evidence for any rational jury to conclude that the gun barrel was less than twelve inches in length. When Mathis was asked if the gun was as much as a foot long, he responded in the affirmative. Because both the question and the answer referred to the approximate length of the entire gun, the jury could infer that the barrel would necessarily be shorter than twelve inches. In addition, Mathis testified that the defendant held the gun in his "hand" not his hands. If the length of the gun barrel were longer than twelve inches, the jury could infer that the defendant might not be able to hold the weapon with only one hand.

Finally, Mathis was asked to demonstrate to the jury the size of the gun by spreading his hands apart. While the record does not reflect exactly how far apart his hands were, the jury witnessed this demonstrative evidence and, after being instructed on the state's burden of proving the length of the barrel, convicted the defendant of carrying a pistol without a permit. "Jurors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. *State* v. *Cintron*, 39 Conn. App. 110, 119, 665 A.2d 95 (1995)." *State* v. *Crump*, 43 Conn. App. 252, 256, 683 A.2d 402, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996). The jury apparently believed that the cumulative effect of Mathis' testimony and demonstrative evidence were sufficiently probative on the element of the length of the gun barrel. We conclude that there was sufficient evidence presented to allow the jury to conclude as it did.

## III

The defendant next claims that the trial court improperly instructed the jury on the definition of "reasonable doubt." Specifically, he claims that the trial court violated his right to due process of law when it instructed the jury that reasonable doubt is "a doubt for which a valid reason can be assigned" and "a real doubt, an honest doubt." We are not persuaded.

This claim was not preserved at trial, and the defendant seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. This specific jury instruction regarding the meaning of reasonable doubt has been addressed previously in several cases. See *State* v. *Campbell*, 225 Conn. 650, 626 A.2d 287 (1993); *State* v. *Thomas*, 214 Conn. 118, 570 A.2d 1123 (1990); *State* v. *Crosby*, 34 Conn. App. 261, 641 A.2d 406, cert. denied, 230 Conn. 903, 644 A.2d 916 (1994); *State* v. *Johnson*, 29 Conn. App. 584, 617 A.2d 174 (1992), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993). Because those cases hold that this type of jury instruction is proper, we conclude that review under *Golding* is not justified because no constitutional violation has occurred that has deprived the defendant of a fair trial.

## IV

The defendant finally claims that the trial court improperly violated his constitutional right against double jeopardy when it convicted him of both manslaughter in the first degree and of the commission of a class A, B or C felony with a firearm. We disagree that the defendant's constitutional right against double jeopardy was violated, but agree that his separate conviction under § 53-202k should be vacated.

The double jeopardy issue has previously been addressed by this court in *State* v. *Ingram*, 43 Conn. App. 801, 826, 687 A.2d 1279 (1996), cert. denied, 240

Conn. 908, 689 A.2d 472 (1997), in which we concluded that providing for sentence enhancement for crimes committed with a firearm was a valid legislative determination that did not violate the constitutional prohibition against double jeopardy. Therefore, the defendant's double jeopardy claim is without merit.

Our Supreme Court recently addressed the issue of whether § 53-202k constituted a separate substantive offense in *State* v. *Dash*, 242 Conn. 143, 146, 698 A.2d 297 (1997), and concluded that it is only a sentence enhancement provision, not a separate substantive offense for which a defendant can be convicted. The state concedes that *Dash* is controlling here and that the defendant's conviction under § 53-202k should be vacated. Accordingly, we remand the case to the trial court to vacate that conviction and to resentence the defendant on the other charges enhanced pursuant to § 53-202k.

The judgment is reversed in part and the case is remanded with direction to vacate the defendant's conviction under § 53-202k and to resentence the defendant in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.