******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

STATE OF CONNECTICUT *v.* JEFFREY COVINGTON
(AC 39141)

Alvord, Keller and Bright, Js.

*Syllabus*

Convicted, following a jury trial, of the crime of carrying a pistol without
a permit and, following a trial to the court, of the crime of criminal
possession of a firearm, the defendant appealed to this court. The defen-
dant had been charged with murder and assault in the first degree in
connection with a shooting incident. He elected a jury trial as to all of
the charges except for the charge of criminal possession of a firearm,
for which he elected a trial to the court. After the jury was unable to
reach a verdict on the charges of murder and assault in the first degree,
the court declared a mistrial as to those charges and found the defendant
guilty of criminal possession of a firearm. *Held*:

1. The defendant's claim that the evidence was insufficient to support his
   conviction of carrying a pistol without a permit was unavailing: the
   jury's inability to reach a unanimous verdict on the murder and assault
   charges did not suggest that it did not believe that the defendant was the
   shooter, as the jury's inability to reach a verdict could not be construed
   as a verdict or acquittal, the state was not required to present the
   testimony of an eyewitness to the shooting or forensic evidence that
   tied the defendant to the shooting, but could rely on circumstantial
   evidence to prove that he was the shooter, and the defendant made
   several highly incriminating statements after the shooting, which the
   jury could have found to be compelling circumstantial evidence that he
   was the shooter, and did not argue that the evidence was insufficient
   to demonstrate that he lacked a permit at the time of the shooting;
   moreover, the jury could have found that the defendant possessed a
   pistol, as defined by statute (§ 29-27), at the time and place of the
   shooting, as evidence concerning the bullets recovered from the victims'
   bodies and testimony regarding the defendant's possession of a handgun
   immediately after the shooting reasonably and logically supported a
   finding that he carried out the shooting with a handgun that had a barrel
   of less than twelve inches in length.

2. The defendant could not prevail on his unpreserved claim that his convic-
   tion of criminal possession of a firearm should be vacated, which was
   based on his assertion that his rights to a trial by jury and to a fair trial
   were violated because the trial court's finding of guilt contravened what
   he claimed was the jury's verdict on the murder and assault charges;
   the jury's inability to reach a unanimous verdict on the murder and
   assault charges did not shed light on its assessment of the evidence as
   to those counts, there was no basis in law to equate its inability to reach
   a unanimous verdict with a finding or a verdict in the defendant's favor,
   and, thus, the defendant could not demonstrate that a constitutional
   violation existed and deprived him of a fair trial pursuant to *State* v.
   *Golding* (213 Conn. 233), that the trial court committed plain error or
   that its determination warranted the exercise of this court's supervisory
   authority over the administration of justice.

3. The defendant could not prevail on his unpreserved claim that he was
   entitled to a new sentencing hearing because the trial court impermissi-
   bly relied on facts that contravened the jury's determination as to the
   murder and assault charges; the defendant failed to demonstrate that
   any error existed, as his claim rested on the flawed premise that the
   jury made findings of fact with respect to the murder and assault charges.

Argued March 21—officially released August 21, 2018

*Procedural History*

Substitute information charging the defendant with
the crimes of murder, assault in the first degree, car-
rying a pistol without a permit and criminal possession
of a firearm, brought to the Superior Court in the judicial

district of New Haven, where the charges of murder, assault in the first degree and carrying a pistol without a permit were tried to the jury before *Alander, J.*; verdict of guilty of carrying a pistol without a permit; thereafter, the court declared a mistrial as to the charges of murder and assault in the first degree; subsequently, the defendant was tried to the court on the charge of criminal possession of a firearm; judgment of guilty of carrying a pistol without a permit and criminal possession of a firearm, from which the defendant appealed to this court. *Affirmed.*

*Naomi T. Fetterman*, assigned counsel, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *John P. Doyle, Jr.*, and *Seth Garbarsky*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Jeffrey Covington, appeals from the judgment of conviction, rendered following a jury trial, of carrying a pistol without a permit in violation of General Statutes § 29-35, and the judgment of conviction, rendered following a court trial, of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1).[1] The defendant claims that (1) this court should vacate his conviction of carrying a pistol without a permit because the evidence was insufficient to support his conviction for that offense; (2) this court should vacate his conviction of criminal possession of a firearm because, in finding guilt with respect to that offense, the court impermissibly contravened the jury's "verdict" with respect to murder and assault counts with which he also had been charged, thereby violating his right to a trial by jury and his right to a fair trial; and (3) this court should afford him a new sentencing hearing because, at the time of sentencing, the trial court impermissibly relied on facts that contravened the jury's "verdict" with respect to the murder and assault charges. We affirm the judgment of the trial court.

The state presented evidence of the following facts. At or about 8 p.m., on March 24, 2014, the defendant was operating an automobile that was owned by his friend, Derek Robinson. When the defendant drove Robinson's automobile away from the intersection of Whalley Avenue and the Ella T. Grasso Boulevard in New Haven, Robinson was in the passenger's seat. A short time later, at approximately 8:50 p.m., Robinson's automobile was parked along Shelton Avenue in New Haven, near the intersection of Shelton Avenue and Ivy Street. At that time, the victims, Trayvon Washington and Taijhon Washington, were walking home from a friend's house. They walked past Robinson's automobile while someone was getting into it. The victims continued walking from Shelton Avenue to Butler Street. Approximately two minutes after they had passed the automobile, as they were walking along Butler Street in the vicinity of the Lincoln-Bassett School, the automobile approached them at a high rate of speed. Taijhon Washington, who was walking just behind his half brother, Trayvon Washington, stated, "watch out, bro." Then, several gunshots emanated from the automobile. Taijhon Washington suffered fatal gunshot injuries to his chest. Trayvon Washington was shot in the head, resulting in a fractured skull. Although he survived the shooting, he endured extensive medical treatment, and a bullet from that incident remained lodged in his head at the time of trial.

Following the shooting, the defendant drove to the residence of his girlfriend's family on Poplar Street in New Haven. He was accompanied by Robinson. The defendant's girlfriend along with some of her family

members, including her sister, Dajah Crenshaw, were present at the residence. The defendant arrived shortly before the shootings were reported on the evening news.[2] When the defendant entered the residence, he was holding the keys to Robinson's automobile. Crenshaw observed Robinson remove a handgun from his waistband and hand it to the defendant. Thereafter, the defendant concealed the handgun in a dresser in his girlfriend's bedroom.

The following day, Crenshaw overheard the defendant having a telephone conversation with Robinson's brother. During the conversation the defendant referred to a gun, and he asked Robinson's brother if he had buried it. In the days that followed, the defendant made various statements that reflected his involvement in and responsibility for the shooting.[3] Significantly, the defendant admitted to a longtime acquaintance, Margaret Flynn, that he happened to catch Taijhon Washington off guard and had killed him. The defendant elaborated, stating that the shooting occurred while he was in Robinson's automobile, but that Robinson was not involved and was unaware that the shooting was going to happen. Moreover, the defendant told Flynn that he retaliated against Taijhon Washington because, in February, relatives of Taijhon Washington assaulted him. Additional facts will be set forth, as necessary.

## I

First, the defendant claims that this court should vacate his conviction of carrying a pistol without a permit because the evidence was insufficient to support his conviction for that offense. We disagree.

We begin our analysis of the defendant's claim by setting forth the principles that guide us when we consider claims of insufficient evidence. "The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves

the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Campbell*, 328 Conn. 444, 503–505, 180 A.3d 882 (2018).

Next, we examine the essential elements of the offense. Section 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ." "[T]o obtain a conviction for carrying a pistol without a permit, the state was required to prove beyond a reasonable doubt that the defendant (1) carried a pistol, (2) for which he lacked a permit, (3) while outside his dwelling house or place of business." *State* v. *Douglas*, 126 Conn. App. 192, 209, 11 A.3d 699, cert. denied, 300 Conn. 926, 15 A.3d 628 (2011); see also *State* v. *Tinsley*, 181 Conn. 388, 403, 435 A.2d 1002 (1980) (explaining essential elements of § 29-35), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981).

"This court has explained that carrying and possession are different concepts. . . . While a person can possess an item without carrying it on his person, § 29-35 is designed to prohibit the carrying of a pistol without a permit and not the [mere] possession of one. . . . Accordingly, constructive possession of a pistol or revolver will not suffice to support a conviction under § 29-35. . . . Instead, to establish that a defendant carried a pistol or revolver, the state must prove beyond a reasonable doubt that he bore a pistol or revolver upon his person . . . while exercising control or

dominion of it. . . . Because there is no temporal requirement in § 29-35 . . . and no requirement that the pistol or revolver be moved from one place to another to prove that it was carried . . . a defendant can be shown to have carried a pistol or revolver upon his person, within the meaning of the statute, by evidence proving, inter alia, that he grasped or held it in his hands, arms or clothing or otherwise bore it upon his body for any period of time while maintaining dominion or control over it." (Citations omitted; internal quotation marks omitted.) *State* v. *Crespo*, 145 Conn. App. 547, 573–74, 76 A.3d 664 (2013), aff'd, 317 Conn. 1, 115 A.3d 447 (2015).

"The term 'pistol' and the term 'revolver', as used in sections 29-28 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length." General Statutes § 29-27. In cases in which a violation of § 29-35 is charged, "the length of the barrel is . . . an element of [the] crime and must be proven beyond a reasonable doubt." *State* v. *Hamilton*, 30 Conn. App. 68, 73, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994); see also *State* v. *Fleming*, 111 Conn. App. 337, 346–47, 958 A.2d 1271 (2008), cert. denied, 290 Conn. 903, 962 A.2d 794 (2009). We observe, however, that, like the other essential elements of the offense, the length of the barrel of a pistol or revolver may be proven by circumstantial, rather than direct, evidence. "Direct numerical evidence is not required to establish the length of the barrel of a handgun in question." *State* v. *Miles*, 97 Conn. App. 236, 242, 903 A.2d 675 (2006).

In challenging the sufficiency of the evidence, the defendant argues that the state failed to present evidence from which the jury could have found that he possessed a pistol, as defined in § 29-27, at the time and place of the alleged shooting. In a long form information, the state alleged that the defendant committed this offense at or about 8:50 p.m., on March 24, 2014, in the area of Lilac and Butler Streets in New Haven. Moreover, with respect to the essential elements of the offense, the court instructed the jury with respect to the specific time and place the state alleged that the crime was committed and that, to convict the defendant, the state bore the burden of proving beyond a reasonable doubt, inter alia, that he carried the pistol when he was not within his dwelling or place of business. The court stated that the state bore the burden of proving that he "possessed the pistol or revolver upon his person in a public place."

In arguing that the evidence was insufficient to convict him of carrying a pistol without a permit, the defendant relies on the undisputed fact that the state did not introduce into evidence what it believed to be the gun used in the shooting. He argues that the evidence that Robinson handed him a pistol or a revolver while he

was at Crenshaw's residence shortly after the alleged shooting was insufficient to convict him of the offense. Moreover, the defendant argues, the state did not present any evidence from which the jury reasonably could have found that the barrel of the gun that he allegedly used in the shooting was less than twelve inches in length.

The defendant argues that, to the extent that the state relies on evidence that he was the shooter, it failed to present evidence to demonstrate that he was, in fact, the shooter. The defendant argues that there was "[a] lack of objective evidence . . . to independently support the conviction," and he supports this argument primarily by his belief that, "[i]n this case, the jury's verdict with respect to the murder and assault charges was 'not guilty.' " The defendant argues that "the jury's acquittal on the murder and assault charges" should compel this court to conclude that "there was insufficient evidence that [he] was in fact the shooter."

The defendant's attempt to disregard the significance of the evidence that he was the shooter lacks merit. It is belied by the unambiguous record of what transpired at trial and, specifically, the verdict actually returned by the jury. The record reflects that, during the jury's deliberations, it indicated to the court that it was unable to reach a unanimous verdict with respect to the murder and assault counts. The court provided the jury with a Chip Smith instruction.[4] Thereafter, the jury indicated to the court that it had reached a unanimous verdict with respect to the carrying a pistol without a permit count, but was "hopelessly deadlocked" with respect to the murder and assault charges. Relying on the jury's representation, the court declared a mistrial with respect to the murder and assault charges. The jury unanimously returned a finding of guilt with respect to the carrying a pistol without a permit count.

"It is settled doctrine in Connecticut that a valid jury verdict in a criminal case must be unanimous. . . . A nonunanimous jury therefore cannot render any 'finding' of fact." (Citations omitted.) *State* v. *Daniels*, 207 Conn. 374, 388, 542 A.2d 306 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989); see also *State* v. *Aparo*, 223 Conn. 384, 388, 614 A.2d 401 (1992) (same), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 122 L. Ed. 2d 785 (1993). The jury's inability to reach a unanimous verdict with respect to the murder and assault charges does not shed any light on the jury's assessment of the merits of the evidence presented with respect to those counts or suggest that the jury did not believe that he was the shooter. There is absolutely no legal authority to somehow consider the jury's inability to reach a verdict with respect to these counts as a "verdict," an "acquittal," or any type of finding at all. Accordingly, in arguing that the evidence did not support a finding that he was the shooter, the defendant's

reliance on the jury's inability to reach a unanimous verdict is misplaced.[5]

In arguing that the evidence did not support a finding that he was the shooter, the defendant also relies on the fact that no eyewitness to the shooting identified him as the shooter, no forensic evidence tied him to the shooting, and, for a variety of reasons, the jury should have not found the state's witnesses to be credible. These arguments are not persuasive because, to demonstrate that the defendant was the shooter, it was not required that the state present the testimony of an eyewitness to the shooting or forensic evidence that tied the defendant to the shooting. The state could prove that the defendant was the shooter by relying on circumstantial evidence. Moreover, the defendant's arguments concerning the credibility of the state's witnesses were fodder for the jury's consideration. In our review of the evidence, we must evaluate the testimony of the state's witnesses in the light most favorable to sustaining the jury's verdict. This court "must defer to the finder of fact's evaluation of the credibility of the witnesses that is based on its invaluable firsthand observation of their conduct, demeanor and attitude. . . . [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Citation omitted; internal quotation marks omitted.) *State* v. *Colon*, 117 Conn. App. 150, 154, 978 A.2d 99 (2009).

The defendant acknowledges that the state presented evidence that, following the shooting, the defendant made several statements in which he incriminated himself as being the shooter. The defendant attempts to downplay the weight of these statements as proof of his guilt by arguing that the statements were "ambiguous" and "feckless . . . ." It suffices to observe that, among the many statements attributed to the defendant that reflected his consciousness of guilt, the state presented testimony from Crenshaw that, on the day after the shooting, she overheard a conversation between the defendant and Robinson's brother in which the defendant asked if a gun had been "buried." See, e.g., *State* v. *Otto*, 305 Conn. 51, 73, 43 A.3d 629 (2012) (destruction or concealment of murder weapon may reflect consciousness of guilt). Moreover, the state presented evidence that the defendant admitted to Flynn that he committed the shooting from Robinson's automobile and that he was motivated to retaliate against Taijhon Washington because of an incident that involved his family members. These statements may not reasonably be deemed to be ambiguous or feckless. Rather, they are highly incriminating and, in interpreting the evidence in the light most favorable to the jury's

finding of guilt, we must presume that in its assessment of all of the evidence presented at trial, the jury found them to be compelling circumstantial evidence that the defendant was the shooter.

The defendant has not persuaded us that the evidence was insufficient to prove that he was the shooter and, thus, utilized a firearm of some type at the time and place of the shooting, which indisputably took place outside of his dwelling house or place of business. The defendant does not argue that the evidence was insufficient to demonstrate that, at the time of the shooting, he lacked a permit. Thus, we turn our attention to the defendant's argument that there was no evidence that the firearm he used was a "pistol" as defined in § 29-27. We look to additional relevant evidence presented by the state.

During the state's case-in-chief, Crenshaw testified that, when the defendant and Robinson arrived at her residence shortly after the shooting occurred, they were acting differently.[6] She observed Robinson remove what she described as "a handgun" from his waistband and hand it to the defendant. She testified that the defendant concealed the handgun in a dresser in her sister's bedroom.

During the state's case-in-chief, it also presented testimony from Susan S. Williams, an associate medical examiner employed by the Office of the Chief Medical Examiner for the state. She testified that, on March 26, 2014, she performed an autopsy on Taijhon Washington. During the autopsy, she recovered two bullets, one found in the victim's right lung and another found in soft tissue at the top of his left chest. These bullets were presented in evidence.

The state also presented testimony from Earl Williams, a firearms examiner employed by the state's forensic science laboratory. Earl Williams testified that he carefully examined the bullets that were recovered from Taijhon Washington's body. Earl Williams testified that the bullets were .32 caliber lead bullets that reflected "rifling impressions . . . ." Earl Williams testified that these impressions are "lands and grooves which are impressed [on a bullet] when the bullet travels down the barrel, as well as the direction in which they twist." According to Earl Williams, "rifling" is defined as spiraling grooves inside of a gun's barrel that are designed to make a bullet fired from that gun spin in such a manner that it becomes stable in flight. Earl Williams testified that rifling is found in "rifled firearms," but not shotguns, which he described as being "smooth bore . . . ." The prosecutor asked Earl Williams if "handguns, such as pistols and revolvers" exhibit rifling, and Earl Williams testified that they did.

Earl Williams testified that the bullets recovered from the victim's body were in a badly damaged condition,

meaning that they lacked individual characteristics that might have been used to identify a particular firearm from which they had been fired. Although Earl Williams testified that he was not able to identify or eliminate the bullets as having been fired from the same specific firearm, he testified that both bullets were similar in terms of the unique rifling impressions that appeared on them. Earl Williams agreed that both of the .32 caliber bullets were "consistent with bullets that would be fired out of a .32 caliber handgun or revolver . . . ."[7]

When viewed in conjunction with a finding that the defendant was the shooter, the foregoing evidence concerning the bullets recovered from Taijhon Washington's body and Crenshaw's testimony regarding the defendant's possession of a handgun immediately after the shooting reasonably and logically supported a finding that the firearm that the defendant utilized during the shooting was either a *handgun* or a *revolver*. Although neither Crenshaw nor Earl Williams defined the words "handgun" or "revolver" during their testimony, they did not suggest that these words had peculiar, specialized, or technical meanings. We observe that these words are commonly and frequently used in the English language. Thus, it is appropriate to presume that in its careful assessment of the witnesses' testimony, the jury afforded these terms their common meanings. "Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 157, 869 A.2d 192 (2005).

In setting forth the common understanding of words and phrases, it is appropriate to rely on their dictionary definitions. "[T]he definition of words in our standard dictionaries is taken as a matter of common knowledge which the jury is supposed to possess." *State* v. *Asherman*, 193 Conn. 695, 737, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); see also *State* v. *Lewis*, 303 Conn. 760, 781, 36 A.3d 670 (2012) (same). A "handgun" is defined as "any firearm that can be held and fired with one hand; a revolver or a pistol." Random House Webster's Unabridged Dictionary (2d Ed. 2001); see also Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) (defining "handgun" as "firearm [as a revolver or pistol] designed to be held and fired with one hand"). A "revolver" is defined as "a handgun having a revolving chambered cylinder for holding a number of cartridges, which may be discharged in succession without reloading." Random House Webster's Unabridged Dictionary (2d Ed. 2003); see also Merriam-Webster's Collegiate Dictionary, supra (defining "revolver" as "handgun with a cylinder of several chambers brought successively into line with the barrel and discharged with the

same hammer").

Because Earl Williams testified that the bullets were consistent with having been fired from a handgun or a revolver, which is a type of handgun, his testimony reasonably and logically supported a finding that the bullets had been fired from a handgun. Furthermore, Crenshaw confirmed that the gun she saw Robinson pass to the defendant shortly after the shootings was a handgun.[8] This court has held that a finder of fact reasonably may infer that a handgun—defined broadly as a type of weapon that may be held and fired with one hand—necessarily has a barrel of less than twelve inches. For example, in *State* v. *Williams*, 48 Conn. App. 361, 370, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998), a defendant who was convicted of carrying a pistol without a permit claimed in relevant part that the state did not present sufficient evidence of the barrel length of the firearm that was utilized in the commission of the crime. Although the state presented scant evidence with respect to the issue, it nonetheless presented the testimony of an eyewitness to the crime who testified that the defendant had held the gun used in the commission of the crime in his " 'hand.' " Id., 372. This court, rejecting the claim that the evidence was insufficient to support the conviction, reasoned that "[i]f the length of the gun were longer than twelve inches, the jury could infer that the defendant might not be able to hold the weapon with only one hand." Id.

Similarly, in *State* v. *Fleming*, supra, 111 Conn. App. 346, a defendant appealed from a conviction of carrying a pistol without a permit on the ground that the state did not present sufficient evidence of the barrel length of the firearm used in the commission of the crime. Among the evidence on which this court relied in rejecting the defendant's claim of evidentiary insufficiency was the statement of an eyewitness that the defendant had held the firearm used in the commission of the crime with one hand. Id., 348. This court reasoned that this evidence reasonably supported an inference by the jury that the barrel of the firearm was less than twelve inches in length. Id., 348–49.

Moreover, Crenshaw testified that she observed Robinson remove the handgun at issue from his waistband before handing it to the defendant. Both this court and our Supreme Court have concluded that such evidence is sufficient for a reasonable jury to conclude that the barrel of the gun must be less than twelve inches in length. See *State* v. *Williams*, 231 Conn. 235, 252, 645 A.2d 999 (1994) (evidence that defendant pulled small handgun out of his waist length jacket reasonably supported finding that handgun had barrel of less than twelve inches in length), overruled in part on other grounds, *State* v. *Murray*, 254 Conn. 472, 487, 757 A.2d 578 (2000); see also *State* v. *Trotter*, 69 Conn. App. 1,

7, 793 A.2d 1172 (2002) (evidence that defendant left crime scene with gun that he concealed in his coat pocket relied on to support finding that defendant carried firearm with barrel of less than twelve inches in length), cert. denied, 260 Conn. 932, 799 A.2d 297 (2002); *State* v. *Gonzalez*, 25 Conn. App. 433, 444, 596 A.2d 443 (1991) (evidence that defendant utilized pistol that he carried in his back pocket relied on to support finding that firearm had barrel of less than twelve inches in length), aff'd, 222 Conn. 718, 609 A.2d 1003 (1992).

The state accurately observes that it may prove the barrel length of a firearm by circumstantial evidence. In the present case, the state presented evidence that the defendant was the shooter. The state presented in evidence two .32 caliber bullets that were recovered from the body of one of the victims. The state presented Earl Williams' opinion that these bullets by their nature and markings were consistent with having been fired from a handgun. Crenshaw testified that the defendant possessed and concealed a handgun shortly after the shootings. The testimony of Earl Williams and Crenshaw, as well as other evidence and findings based thereon related to the shooting, provided the jury with a factual basis on which to find beyond a reasonable doubt that the defendant carried out the shooting with a firearm that had a barrel of less than twelve inches in length. Accordingly, we conclude that the state satisfied its burden of proving that the defendant carried a pistol, as defined in § 29-27.

## II

Next, the defendant claims that this court should vacate his conviction of criminal possession of a firearm because, in finding guilt with respect to that offense, the trial court impermissibly contravened the jury's "verdict" with respect to the murder and assault charges, thereby violating his right to a trial by jury and his right to a fair trial. We conclude that the defendant is unable to obtain any type of relief on the basis of this unpreserved claim.

For the first time, on appeal, the defendant argues that the court violated his right to a trial by jury and his right to a fair trial because in its findings with respect to the criminal possession of a firearm count, which was tried to the court, the court impermissibly found that "[he] had committed the murder and assault" offenses with which he had been charged.[9] The defendant argues that the court's finding in this regard was impermissible because, with respect to the murder and assault charges, he had elected to be tried by a jury, and "[o]nce the jury acquitted [him] of those charges, the court had no basis to contravene the jury's verdict and find that [he had] possessed a firearm." The defendant argues that the court should have "abided by the jury's determination regarding [the murder and assault charges]."[10]

The defendant seeks review of this unpreserved claim under the bypass doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[11] Alternatively, he argues that the court's error rose to the level of plain error; Practice Book § 60-5;[12] or that this court should grant him relief in the exercise of its supervisory authority over the administration of justice.[13]

The defendant's claim rests on a fundamentally flawed factual premise that the jury returned a verdict of not guilty with respect to the murder and assault charges.[14] As we already have explained in part I of this opinion, the record reflects that the jury repeatedly indicated to the court that it was unable to reach a unanimous verdict with respect to the murder and assault charges.[15] Thereafter, the court declared a mistrial as to the murder and assault charges. For the reasons discussed in part I of this opinion, we conclude that the jury's inability to reach a unanimous verdict in connection with the murder and assault charges does not shed any light on the its assessment of the merits of the evidence presented with respect to those counts. There is no basis in law to equate the jury's inability to reach a unanimous verdict with respect to these charges as a finding or a verdict in the defendant's favor. The events at trial reflect an inability of the jury to reach a verdict on these counts, and nothing more.

On this unambiguous record, we readily conclude that the defendant is unable to demonstrate, for purposes of *Golding*, that the alleged constitutional violation exists and deprived him of a fair trial. Also, the defendant is unable to prevail under the plain error doctrine because he cannot demonstrate that an obvious error exists that affects the fairness and integrity of and public confidence in the judicial proceedings. Finally, the defendant is unable to demonstrate that, with respect to the present claim, an issue of the utmost seriousness is present that warrants the exercise of our supervisory authority. In short, the present claim falls far short of the mark of warranting relief under any of the extraordinary avenues of review invoked by the defendant.[16]

### III

Finally, the defendant argues that this court should afford him a new sentencing hearing because, at the time of sentencing, the trial court impermissibly relied on facts that contravened the jury's "verdict" with respect to the murder and assault charges. We conclude that the defendant is unable to obtain any relief on the basis of this unpreserved claim.

For the first time, on appeal, the defendant argues that the court relied on an improper finding at the time of sentencing, which was that he had used a firearm to shoot the victims.[17] The defendant argues that the court's reliance on this finding was improper for the

reasons we already have discussed in parts I and II of this opinion, specifically, because the finding conflicts with what he believes was the jury's "verdict" with respect to the murder and assault counts. The defendant argues in relevant part: "The court's reliance on conduct for which [he] elected to have tried to a jury and was ultimately acquitted of to justify an increased sentence is a violation of [his] due process rights to a fair sentencing and violates [his] sixth amendment right to a jury trial." The defendant argues: "Absent a jury's finding of guilt as to the murder and assault charges . . . a sentence imposed on a judicial finding to the contrary must be vacated." The defendant repeatedly asserts that the court's reliance on its finding that he was the shooter was improper because it contravenes "the jury's verdict."

The defendant urges us to review this unpreserved claim pursuant to the bypass doctrine of *Golding*. Alternatively, he argues that the court's reliance on its finding that he was the shooter reflects plain error and that this court should afford him relief in the exercise of its supervisory authority over the administration of justice. In part II of this opinion, we discussed the parameters of these extraordinary avenues of review. For the reasons already set forth, we conclude that the defendant has not demonstrated that he is entitled to relief under any of these doctrines. Because the defendant's claim rests on the fundamentally flawed factual premise that the jury made findings of fact with respect to the murder and assault charges, he has failed to demonstrate that any error exists.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant was tried before a jury with respect to two additional counts, specifically, murder in violation of General Statutes § 53a-54a (a) and assault in the first degree with a firearm in violation of General Statutes § 53a-59 (a) (5). After the jury indicated that it was unable to reach a unanimous verdict with respect to these counts, the court declared a mistrial with respect to them. The defendant waived his right to a jury trial with respect to the criminal possession of a firearm count.

For the carrying a pistol without a permit conviction, the court sentenced the defendant to a term of incarceration of five years (with one year being a mandatory minimum sentence), execution suspended after three years, followed by a period of probation of three years. For the criminal possession of a firearm conviction, the court sentenced the defendant to a term of incarceration of ten years (with two years being a mandatory minimum sentence), execution suspended after seven years, followed by a period of probation of three years. Additionally, the court required the defendant to register as a deadly weapon offender for a period of five years. The court ordered that the sentences were to run consecutively.

[2] At trial, Crenshaw testified on behalf of the state concerning what she observed and overheard after the defendant and Robinson arrived at her residence. Although Crenshaw testified that, following the defendant's arrival, she and other family members were watching "the news" on television, at which time they heard news about the shooting, she did not identify which news program that she was watching. In light of the evidence that the shooting occurred at or about 8:50 p.m., the jury reasonably could have inferred that Crenshaw had been watching one of the local 10 p.m. or 11 p.m. news programs.

[3] Additionally, the state presented evidence of the defendant's conduct following his arrest that strongly suggested that he was conscious of his

guilt. This evidence included recorded telephone conversations in which the defendant engaged while he was incarcerated and awaiting trial. The evidence reflected that he took steps to prevent Robinson from testifying at his hearing in probable cause. Also, the defendant attempted to establish a false alibi for both himself and Robinson covering the time of the shooting. Moreover, the state presented evidence that, while incarcerated, the defendant and an acquaintance watched television news coverage of the shooting. The defendant flippantly acknowledged in the presence of others that he had been the shooter, and laughed at the televised interview of the victims' mother.

[4] A Chip Smith instruction provides guidance to a deadlocked jury in reaching a verdict. See *State* v. *O'Neil*, 261 Conn. 49, 74–75, 801 A.2d 730 (2002).

[5] We also observe that, in arguing that the evidence presented by the state at the present trial was insufficient to demonstrate that he carried a pistol without a permit, the defendant appears to rely, in part, on his representation that, during a retrial on the murder and assault counts, a jury found him not guilty of the murder and assault offenses. The defendant does not provide any explanation as to why the outcome of a subsequent trial should affect our analysis of the evidence presented in the present trial. His reliance on what transpired in a separate proceeding is not in any way relevant to our analysis.

[6] Crenshaw testified that, on March 24, 2014, the defendant and her sister were dating, and that the defendant came to her residence often. Crenshaw also testified that she was friendly with Robinson, having known him for seven or eight years. Crenshaw testified that, after the defendant and Robinson arrived at her residence following the shooting, Robinson appeared to be nervous and that the two men kept looking at one another.

[7] As we observed previously, the state did not recover a murder weapon and, consequently, was unable to present any forensic evidence related directly thereto. It is not surprising that, during cross-examination, Earl Williams agreed with defense counsel that he was unable to testify with any degree of certainty what particular gun the .32 caliber bullets had been fired from. He agreed that he was not able "to ascertain" whether they had been fired from "either a revolver . . . or [a] semiautomatic . . . ."

Consistent with the lack of a suspected murder weapon in evidence and Earl Williams' testimony that the damaged condition of the bullets precluded him from opining with respect to whether the recovered bullets had been fired from the same specific firearm, this testimony on cross-examination does not detract from the weight of Earl Williams' opinion during his direct examination that the bullets were "consistent with bullets that would be fired out of a .32 caliber handgun or revolver . . . ."

[8] Given the evidence that the defendant was both the shooter and the driver of Robinson's automobile at about the time of the shootings, it would be reasonable for the jury to infer that after firing the gun, the defendant passed it to Robinson while the defendant drove away from the scene of the shootings. Thus, the jury could reasonably conclude that the gun the defendant used during the shooting and the gun Robinson handed him shortly thereafter were one and the same.

[9] After the court declared a mistrial with respect to the murder and assault charges and accepted the jury's verdict with respect to the carrying a pistol without a permit charge, it afforded the parties an opportunity to make arguments with respect to the criminal possession of a firearm charge before announcing its finding of guilt with respect to that charge. The parties stipulated that the defendant previously had been convicted of a felony offense.

The court discussed the evidence presented by the state, including the evidence of his incriminatory admissions to Flynn; incriminatory statements that he made to one of his fellow inmates, William McKinney; the incriminatory statements he made to and in the presence of Crenshaw; and the incriminating statements made by the defendant while he was incarcerated following the shooting, which were reflected in recorded telephone conversations.

In relevant part, the court then stated: "The obvious question is why would anyone confess to his neighbor or admit his involvement in the day room of a jail, and why would anyone hatch a plan to tamper with a witness on prison phones that one had to know were monitored and recorded? The answer lies in the hubris, or the vain glory of a nineteen year old young man who took pride in successfully [exacting] his revenge. The glory was in the telling.

"Viewed in isolation, the [evidence presented by the state] may not convince a reasonable fact finder beyond a reasonable doubt that the defendant was the shooter; viewed together, each buttresses and confirms the other and convinces this fact finder beyond a reasonable doubt that the defendant possessed a firearm on the evening of March 24, 2014, at the corner [of] Lilac and Butler Streets. . . . After weighing and considering all the evidence in this case, I conclude that [the] state has proved beyond a reasonable doubt that the defendant committed the crime of criminal possession of a firearm."

[10] We note that at no point during the trial did the court expressly state that it believed, let alone had found, that the defendant had committed murder or assault. To the contrary, at the time of sentencing, the court appears to have expressed its belief that the defendant lacked the specific intent necessary for the commission of either of these offenses. See footnote 17 of this opinion. Instead, the court stated that it believed that the defendant shot the victims. Thus, even if we agreed with the defendant that the jury made any findings with respect to the murder and assault charges, it is not at all clear that the court contradicted them in reaching its finding of guilt.

[11] "Under *Golding*, as modified in *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Mitchell*, 170 Conn. App. 317, 322, 154 A.3d 528, cert. denied, 325 Conn. 902, 157 A.3d 1146 (2017).

[12] The plain error doctrine "is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, a] defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Terry*, 161 Conn. App. 797, 820, 128 A.3d 958 (2015), cert. denied, 320 Conn. 916, 131 A.3d 751 (2016).

[13] "It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . The exercise of our supervisory powers is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of the particular trial but also for the perceived fairness of the judicial system as a whole. . . .

"We recognize that this court's supervisory authority is not a form of free-floating justice, untethered to legal principle. . . . Rather, the rule invoking our use of supervisory power is one that, as a matter of policy, is relevant to the perceived fairness of the judicial system as a whole, most typically in that it lends itself to the adoption of a procedural rule that will guide lower courts in the administration of justice in all aspects of the [adjudicatory] process. . . . Indeed, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of [this court's] supervisory powers." (Citations omitted; internal quotation marks omitted.) *In re Yasiel R.*, 317 Conn. 773, 789–90, 120 A.3d 1188 (2015).

[14] In his principal brief, the defendant repeatedly characterizes the jury's inability to reach a unanimous verdict on the murder and assault charges as a "verdict." Curiously, in his reply brief, the defendant states that the court could not "independently render a determination of guilt [with respect to the murder and assault charges] that conflicts with the jury's findings, here the failure of the jury to reach a verdict at all." Also, in his reply brief, the defendant argues for the first time that the court's findings with respect

to the murder and assault charges was improper because, after the court declared a mistrial, the court was bound to presume that he was innocent of these charges. The flaw in the defendant's argument is that the court did not find the defendant guilty of murder or assault. See footnote 9 of this opinion. The defendant was presumed innocent of each and every offense with which he stood charged, including the offense on which the court found him guilty, namely, criminal possession of a firearm. The record reflects, however, that in concluding that the state satisfied its burden of proof with respect to that offense, the court properly considered all of the relevant evidence in its entirety, including the ample evidence that he was the shooter.

[15] We conclude that the defendant's claim rests on the faulty factual premise that the jury made any findings of fact. We observe that, even if the jury had reached a verdict that was contrary to the finding reached by the court, such an occurrence would not lead us to conclude that the inconsistency rendered the outcome illogical or unreasonable. See *State* v. *Knight*, 266 Conn. 658, 674, 835 A.2d 47 (2003) (inconsistency between factual determinations of *separate fact finders* as to different, albeit similar, charges does not render outcome illogical or unreasonable).

[16] Beyond arguing that the court impermissibly found that he was the shooter, the defendant also argues that the court impermissibly "found [him] guilty of criminal possession of a firearm based on its determination that [he] was in fact the shooter." This argument also is belied by the record because, in advancing the argument, the defendant does not rely on the court's statements at the time that it found him guilty of the offense, but on the court's statements at the time of sentencing, which occurred months later. Moreover, beyond arguing that the court could not make findings that contravene those made by the jury, the defendant does not demonstrate why it was improper for the court to rely on the evidence in its entirety, including the evidence that strongly supported a finding that he was the shooter, in reaching its verdict.

[17] At the time of sentencing, the court stated in relevant part: "I'm not here to sentence [the defendant] for murder or . . . assault in the first degree. The jury was hung . . . on those counts. The state apparently plans to retry [the defendant], and he'll have his opportunity . . . to be tried by a jury. I'm here to sentence him for the crimes of carrying a pistol without a permit and criminal possession of a firearm, but the circumstances surrounding the possession of that gun matter, and the circumstances surrounding the possession of that gun involve a shooting.

"I found, having heard the evidence, that he possessed that gun when he was not legally entitled to do so because he was a convicted felon, and I also found that he fired that gun and killed Taijhon Washington and left Travon Washington with a bullet in his head that remains there today. So, it's incumbent upon me to factor those circumstances into an appropriate sentence here. . . .

"[Y]ou committed an extremely impulsive and rash act. I . . . don't find there was any premeditation in it. I don't think you were driving around looking for the Washington brothers, but when you came upon them, you had a gun in your possession and . . . you used it. So, if this were merely a possession case without the circumstances of the gun having been used in the fashion that it was used, this sentence would be very different than the sentence that I think is appropriate, given the seriousness of the offenses and the circumstances in which the gun . . . was used." The court subsequently imposed its sentence. See footnote 1 of this opinion.

---